UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AXLE OF DEARBORN, INC., d/b/a/
DETROIT AXLE, et al.,

                    Plaintiffs,

v.

DETROIT IT, LLC, et al.,

                    Defendants.

_____/

Case No. 21-10163

Stephanie Dawkins Davis
United States District Judge

**ORDER REGARDING PLAINTIFFS' *EX PARTE***
**MOTION FOR ENTRY OF TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION (ECF NO. 8)**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

This case arises from a contract between Plaintiffs, Axle of Dearborn, Inc,
d/b/a Detroit Axle; Detroit Axle, Inc.; and Detroit Axle QSSS, Inc. (collectively
"Detroit Axle") and Defendants, Detroit IT, LLC; and its founder/president/chief
technology officer Eric Grundlehner (collectively "Detroit IT"). Detroit Axle is a
Michigan corporation that distributes new and reconditioned automotive parts
locally and nationwide. (ECF No. 8, PageID.390). Detroit Axle contracted with
Detroit IT in April 2020 to provide it with IT services, including buying networking
and computer equipment for Detroit Axle, and providing IT management services
for Detroit Axle's Michigan and Mexico locations, among other things. (*Id.* at

1

PageID.390–91; ECF No. 8-2, PageID.414). Detroit Axle was not satisfied with the quality of service provided by Detroit IT, and on or about December 7, 2020, Detroit Axle notified Detroit IT that it would be transitioning to a new IT service provider. (ECF No. 8-2, PageID.416). Detroit Axle requested that Detroit IT cooperate in Detroit Axle's transition to a new provider to avoid a disruption in its business operations; Detroit Axle also requested Detroit IT to provide it with all of the passwords and accounts used for the services they provided. (*Id.* at PageID.416). Detroit Axle alleges that Detroit IT failed to cooperate in its transition to a new IT provider, and that Detroit IT changed passwords and de-licensed some of its software. (*Id.* at PageID.416–17). Detroit Axle also alleges that Detroit IT removed access to systems that it uses with its vendors, and revoked access to its firewall— meaning that Detroit Axle does not have control over its internet and network security. (*Id.* at PageID.417). Detroit Axle further states that Detroit IT demanded a ransom in the amount of $185,000 for alleged unpaid equipment in order for Detroit IT to release its control over Detroit Axle's IT network. (*Id.* at PageID.418). As a result of Detroit IT's alleged actions, Detroit Axle asserts that it is unable to secure its IT infrastructure or onboard new employees and that its business operation is in jeopardy of being disrupted and/or shut down. (ECF No. 8, PageID.389; ECF No. 8-2, PageID.413).

On January 22, 2021, Detroit Axle filed a complaint in Oakland County Circuit court, alleging breach of contract, fraud/misrepresentation, and violation of three federal statutes:  The Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Federal Wiretap Act, 18 U.S.C. § 2510; and the Stored Communications Act, 18 U.S.C. § 2701.  (ECF No. 8-2, PageID.420–28).  Detroit Axle also filed an *ex parte* Emergency Motion for Entry of a Temporary Restraining Order and to Show Cause Why a Preliminary Injunction Should Not be Entered in the Oakland County court. (ECF No. 9, PageID.685).  On January 25, 2021, the Oakland County Circuit Court issued an opinion and order on Detroit Axle's motion for *ex parte* relief.  (ECF No. 9-1, PageID.691).  The court found that Detroit Axle had failed to demonstrate that irreparable injury, loss, or damage would result from the delay needed to effect notice on Detroit IT.  (*Id.* at PageID.690).  The court also found that Detroit Axle failed to certify in writing its efforts to provide notice to Detroit IT and its reasons to justify withholding such notice. (*Id.*)  Nonetheless, the order warned Defendants to "proceed at their own risk and peril" if they are found to have actually engaged in the conduct that Plaintiffs allege.  (*Id.* at PageID.691).

Detroit IT removed the matter to this court on January 25, 2021.  (ECF No. 1).  That same day, Detroit Axle filed an *ex parte* motion for a temporary restraining order in this court (ECF No. 7).  Detroit Axle filed an amended *ex parte* Emergency Motion for Temporary Restraining Order and Preliminary Injunction, presently

3

before this court, on January 26, 2021.  (ECF No. 8).  In its motion, Detroit Axle asks this court to issue a temporary restraining order ("TRO") and preliminary injunction, without notice to Detroit IT, to enjoin Detroit IT from removing any equipment and removing or modifying its IT system, amongst other things.  For the reasons discussed below, the court **DENIES** *ex parte* relief and **ORDERS** Detroit Axle to serve its Motion on Defendants.

## II. Discussion

Fed. R. Civ. P. 65(b)(1) governs issuance of temporary restraining orders without notice.  The Rule states that a court may issue a TRO without notice to the adverse party only if:

(A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Detroit Axle submitted a declaration from Andrew Bartnowak, the president of a risk mitigation and investigative consultant company, to verify its claims of irreparable harm.  (ECF No. 11).  Bartnowak reviewed the filings in this case and concluded that Detroit IT's actions have disrupted Detroit Axle's business operations and caused irreparable harm to Detroit Axle.  (ECF No. 11, PageID.695–96). Detroit Axel's verified complaint similarly states that its ability to conduct business has been impaired as a result of Defendants' alleged actions.  (ECF No. 8-

4

2, PageID.412).  It asserts that parts of its facilities do not have internet access and cannot operate; it cannot maintain sufficient security over its buildings, inventory, and employees; it cannot onboard new employees; and that its infrastructure is compromised.  (*Id.* at PageID.412–13).

Further, Bartnowak's declaration corroborates Detroit Axle's claims asserted in its verified complaint that it is facing difficulty in conducting its business operations due to Detroit IT's alleged actions.  Dan Mayer, Chief Technology Officer at Auxiom, Detroit Axle's IT service provider, attests to a number of these issues in his affidavit also.  (ECF No. 8-3).   However, Detroit Axle's claims and supporting documents do not establish that the harm it faces would be both immediate and irreparable absent an *ex parte* TRO.  Indeed, it has not demonstrated that the environment in which it has been operating has substantially changed since early December.  Detroit Axle asserts that its ability to conduct business has been impaired and that its infrastructure is compromised.  But notably, Detroit Axle ended its contract with Detroit IT on December 7, 2020, and on that same date Detroit IT allegedly initiated the actions complained of in the verified complaint.   More particularly, Detroit IT reset passwords, made changes so it could access Detroit Axle's firewall, revoked all other access to the firewall, and removed access to other systems that Detroit Axle uses with its vendors, amongst other things.  (ECF No. 8-2, PgID.417).  Yet, since then, Detroit Axle has been conducting business, albeit

with some difficulty.  It therefore appears that immediate irreparable harm will not occur, at least not harm greater than what has already allegedly occurred, if Detroit IT is provided notice of this Motion and has an opportunity to respond.  This is similar to the conclusion reached by the Oakland County Circuit Court, which found that Detroit Axle failed to demonstrate with specific facts that irreparable injury would result from the delay that was required in order to give notice to Detroit IT. (ECF No. 9-1, PageID.690).  The court deemed Detroit Axle's claims of irreparable harm speculative since Detroit Axle failed to explain how any delay in issuing a TRO would bring on adverse action that had not already happened.  *Id.*  This court agrees and finds that Detroit Axle has not quite made a showing of immediate and irreparable harm absent an *ex parte* TRO.

Next, Detroit Axle's attorneys stated in their brief that they certify that additional notice should not be required because Detroit IT received prior notice of it seeking a TRO in state court, then immediately and improperly removed this case to federal court before they were even served with the complaint and without including Detroit Axle's motion and supplement that were filed in the state court proceedings, a move that Detroit Axle characterizes as procedural "gamesmanship." (ECF No. 8, PageID.380).  However, whether or not Detroit IT erred in failing to include Plaintiffs' motion and supplement in its removal filing, Detroit Axle has not established that removal itself was in fact improper.  Pursuant to 28 U.S.C. § 1441(a),

6

any civil action that is brought in state court may be removed to federal district court if the district courts of the United States have original jurisdiction over the matter. Moreover, a defendant must remove an action within 30 days after receipt of service of the summons and complaint.  28 U.S.C. § 1446 (b)(2)(B).  Detroit IT asserts in its notice of removal that it was served with the complaint on January 25, 2021, and then promptly removed the matter to this court later that same day.  (*See* ECF No.1, PageID.2).  In addition, this court has original jurisdiction over the last three claims asserted in Plaintiffs' complaint—alleging violations of the Computer Fraud and Abuse Act, Federal Wiretap Act, and Stored Communications Act—as they arise under the federal laws of the United States.  28 U.S.C. § 1331.  Therefore, Detroit IT's removal does not appear to be improper pursuant to the rules governing removal and the federal jurisdiction requirements.  As a result, the court concludes that Plaintiffs have failed to bring sufficient evidence of any nefarious activity or improper gamesmanship on the part of the Defendants, such that notice should not be required.

## III.  CONCLUSION

Plaintiffs have not met the requirements to require *ex parte* emergency relief under Rule 65.  Accordingly, the request for *ex parte* relief is **DENIED.**  However, the court makes no findings regarding Detroit Axle's substantive claim for injunctive relief at this juncture.  Plaintiffs must serve their Motion on Defendants, confer with

7

Defendants' attorney(s), and notify the court of the parties' earliest availability to participate in a telephonic status conference with the court.

      **SO ORDERED.**

Dated:  January 27, 2021

s/Stephanie Dawkins Davis
Hon. Stephanie Dawkins Davis
United States District Court Judge

8