UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan corporation;
and DETROIT AXLE QSSS, INC., a Michigan
corporation,

          Plaintiffs,

v.

DETROIT IT, LLC, and ERIC
GRUNDLEHNER.,

          Defendants.

Case No. 21-cv-10163
Hon. Stephanie Dawkins Davis
Magistrate Anthony P. Patti

---

## **DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendants Detroit IT, LLC ("Detroit IT"), and Eric Grundlehner ("Grundlehner") (together "Defendants"), by and through their attorneys, move to dismiss Plaintiffs' claims for fraud (Count III), violation of the Computer Fraud and Abuse Act (Count IV), violation of the Federal Wiretap Act (Count V), violation of the Stored Communications Act (Count VI), injunctive relief (Counts VII and VIII), common law and statutory conversion (Count XI), and civil conspiracy (Count XII) pursuant to Fed. R. Civ. P. 12(b)(6) for the reasons stated in the attached brief in support.

Pursuant to Local Rule 7.1, the undersigned sought concurrence in the relief requested herein from Plaintiffs' counsel and explained the nature of this motion and its legal basis, but such concurrence was denied.

For the reasons stated in the attached brief in support, Defendants request that this Honorable Court grant this motion, dismiss Plaintiffs' Verified Complaint (ECF No. 8-2) with prejudice, award Defendants their costs and attorney fees incurred in filing this motion, and such other and further relief as is consistent with equity and good conscience.

<div style="margin-left:40%">

Respectfully submitted,

**JOELSON ROSENBERG, PLC**

By:*/s/ David W. Warren*
David W. Warren (P32449)
Peter W. Joelson (P51468)
Emily R. Warren (P76675)
Attorneys for Defendants
30665 Northwestern Hwy., Suite 200
Farmington Hills, Michigan 48334
(248) 855-2233
(248) 855-2388 (Fax)
dwarren@jrlawplc.com
pwj@jrlawplc.com
ewarren@jrlawplc.com

</div>

Dated:  February 19, 2021

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan corporation;
and DETROIT AXLE QSSS, INC., a Michigan
corporation,

        Plaintiffs,

v.

DETROIT IT, LLC, and ERIC
GRUNDLEHNER.,

        Defendants.

Case No. 21-cv-10163
Hon. Stephanie Dawkins Davis
Magistrate Anthony P. Patti

---

**<u>BRIEF IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

Statement of Issues Presented .................................................................... i

Controlling or Most Appropriate Authorities .......................................... ii

Cited Authorities ........................................................................................ iii

I.   Statement of Facts ............................................................................ 1

   A.   Plaintiffs Acknowledged Signing Price Quotes and
        Paying Corresponding Invoices ............................................ 1

   B.   Plaintiffs Demanded that Defendants Continue to Provide
        Services After December 7, 2020 ........................................ 2

   C.   Plaintiffs Did Not Require Assistance From Detroit IT to
        Transition to a New IT Service Provider ............................... 3

   D.   Defendants Provided All Requested Credentials to Plaintiffs ............. 4

II.  Analysis ............................................................................................ 4

   A.   Legal Standards ...................................................................... 4

        1.   The Court Must Disregard Conclusory Allegations .................. 5

        2.   Consideration of Matters Outside the Pleadings ....................... 6

        3.   Heightened Pleading Standard for Fraud Claims ...................... 6

   B.   Plaintiffs Failed to Plead a Fraud Claim (Count III) ............................ 7

   C.   Plaintiffs' Claims for Violation of the Computer Fraud and Abuse
        Act (Count IV) and the Stored Communications Act (Count V)
        are Contradicted by Allegations in the Verified Complaint ............... 8

   D.   Plaintiffs' Claim for Violation of the Federal Wiretap Act (Count V)
        is Based on Conclusory Allegations ................................................. 10

E.    Plaintiffs' Claims for Injunctive Relief (Counts VII and VIII)
      are Moot....................................................................................13

F.    Plaintiffs' Conversion Claim (Count XI) is to Recover
      Intangible Property Incapable of Being Converted............................14

G.    Plaintiffs' Claim for Civil Conspiracy (Count X) is Precluded
      by the Intracorporate Conspiracy Doctrine ..........................................16

III.   Conclusion and Request for Relief ...............................................17

## STATEMENT OF ISSUES PRESENTED

I.    Whether Plaintiffs' fraud claim should be dismissed where Plaintiffs failed to identify which items of equipment Defendants allegedly charged for but did not install or which invoices were allegedly fraudulent?

      Defendants Answer:      Yes.

II.   Whether Plaintiffs' claims for violation of the Computer Fraud and Abuse Act and Stored Communications Act should be dismissed where Plaintiffs alleged repeatedly that they expected Defendants to continue to provide services and provided no evidence to support the allegation that Plaintiffs revoked Defendants' access to Plaintiffs' computer network?

      Defendants Answer:      Yes.

III.  Whether Plaintiffs' claim for violation of the Federal Wiretap Act should be dismissed where the only alleged basis for the claim is speculative and based solely on Plaintiffs' subjective "information and belief" and supported by conclusory allegations?

      Defendants Answer:      Yes.

IV.   Whether Plaintiffs' claims for injunctive relief should be dismissed where the allegations in Plaintiffs' complaint show that Plaintiffs did not need Defendants to provide credentials or passwords and Plaintiffs obtained the requested relief through stipulation (ECF No. 24)?

      Defendants Answer:      Yes.

V.    Whether Plaintiffs' claim for conversion should be dismissed where Plaintiffs allege conversion of intangible property that is incapable of being converted?

      Defendants Answer:      Yes.

VI.   Whether Plaintiffs' claim for civil conspiracy should be dismissed pursuant to the intracorporate conspiracy doctrine where the alleged co-conspirators are an entity and its sole owner?

      Defendants Answer:      Yes.

# <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 8 ............................................................................................17

Fed. R. Civ. P. 9(b) ...................................................................................6, 17

Fed. R. Civ. P. 12(b)(6).........................................................................4, 6, 11

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) .........................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................5, 11, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................5, 11, 17

*Great Lakes Acquisition Corp. v. Deary*,
2019 WL 4919148 (E.D. Mich. Oct. 4, 2019) ............................................11

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
59 Mich. App. 366, 229 N.W.2d 456 (1975)..................................................8

*Konop v. Hawaii Airlines*,
302 F.3d 868 (9th Cir. 2002) .......................................................................12

*Nieves v. Bell Industries,*
204 Mich. App 459, 517 N.W.2d 235 (1994).................................................8

*Pompy v. Monroe Bank & Tr.*,
2020 WL 6298102 (E.D. Mich. Aug. 5, 2020).............................................15

## **CITED AUTHORITIES**

Fed. R. Civ. P. 8 ...................................................................................17

Fed. R. Civ. P. 9(b) ...........................................................................6, 17

Fed. R. Civ. P. 12(b)(6)...................................................................4, 6, 11

18 U.S.C. § 1030 ..................................................................................9

18 U.S.C. § 2701 ................................................................................10

MCL § 440.0102(pp) ..........................................................................14

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ...............................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................5, 11, 17

*Bailey v. Bailey*, 2008 WL 324156
(E.D. Mich. Feb. 6, 2008) ..................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................5, 11, 17

*Blair v. Checker Cab Co.*,
219 Mich. App. 667, 558 N.W.2d 439 (1996).........................................16

*DiLuzio v. Vill. of Yorkville, Ohio*,
796 F.3d 604 (6th Cir. 2015) ..............................................................16

*Frank v. Dana Corp.*,
547 F.3d 564 (6th Cir. 2008) ...............................................................6

*Gottlieb v. Arrow Door Co.*,
364 Mich. 450, 110 N.W.2d 767 (1961)................................................17

*Great Lakes Acquisition Corp. v. Deary*,
2019 WL 4919148 (E.D. Mich. Oct. 4, 2019).........................................11

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
59 Mich. App. 366, 229 N.W.2d 456 (1975) ............................................................ 8

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
756 F.3d 917 (6th Cir. 2014) .................................................................................. 11

*Jackson v. Segwick Claims Mgt. Servs., Inc.*,
699 F.3d 466 (6th Cir. 2012) .................................................................................. 7

*Konop v. Hawaii Airlines*,
302 F.3d 868 (9th Cir. 2002) .................................................................................. 12

*Lillard v. Shelby County Bd. of Educ.*,
76 F.3d 716 (6th Cir. 1996) .................................................................................. 5

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......................................................................... 11, 12

*Nieves v. Bell Industries,*
204 Mich. App 459, 517 N.W.2d 235 (1994) ........................................................ 8

*Percival v. Girard*,
692 F. Supp. 2d 712 (E.D. Mich. 2010) ............................................................ 4, 5

*Pompy v. Monroe Bank & Tr.*,
2020 WL 6298102 (E.D. Mich. Aug. 5, 2020) ...................................................... 15

*Qualite Sports Lighting, LLC v. Ortega*,
2019 WL 7582823 (W.D. Mich. Sept. 10, 2019) .................................................. 14

*Rondigo, L.L.C. v. Twp. of Richmond*,
641 F.3d 673 (6th Cir. 2011) .................................................................................. 6

*Sarver v. Detroit Edison Co.,*
225 Mich. App. 580, 571 N.W.2d 759 (1997) ...................................................... 15

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) .............................................................................. 12

## I.   Statement of Facts.

Plaintiffs Axle of Dearborn, Inc., d/b/a Detroit Axle, Detroit Axle, Inc., and Detroit Axle, QSSS, Inc., (together "Plaintiffs") contracted with Defendant Detroit IT, LLC ("Detroit IT") for information technology ("IT") services in April of 2020. By December of 2020, it was clear from Plaintiffs' sustained and repeated failure to timely pay Detroit IT's invoices that Plaintiffs could not afford Detroit IT's services. Plaintiffs have only paid Detroit IT less than half of what is owed.  As of the date herein, Plaintiffs owe Detroit IT over $169,564.07 for unpaid services, equipment, and contractual fees.

### A.   Plaintiffs Acknowledged Signing Price Quotes and Paying Corresponding Invoices.

Plaintiffs denied entering into a "written agreement" with Defendants for IT services.  (ECF No. 8-2, PageID 415, ¶ 29).  However, Plaintiffs admitted to executing price quotes between July 22, 2020, and December 8, 2020, and to paying invoices for equipment and software.  (ECF No. 8-2, PageID 415, ¶¶ 29, 31; PageID 438-470).  Plaintiffs further alleged that the invoices are "binding and enforceable purchase agreements between the parties."  (ECF No. 8-2, PageID 421, ¶ 73).  The invoices attached as "Exhibit A" to Plaintiffs' Complaint (ECF No. 8-2, PageID 438-470) correspond to various Price Quotes referenced in Plaintiffs' Verified Complaint (ECF No. 8-2, PageID 415, ¶ 31) and some of which were filed as Exhibits 1 and 2 to Defendants' Response to Plaintiffs' Emergency Motion for Entry of a Temporary

1

Restraining Order and Preliminary Injunction (ECF No. 13-2, PageID 740-746; ECF No. 13-3, PageID 756-789). For example, Invoice 10537 (ECF No. 8-2, PageID 439) references "Q#21390," or Price Quote 21390 (ECF No. 13-3, PageID757-759). Invoice 12440 (ECF No. 8-2, PageID 457) references "Q#21462" or Price Quote 21462 (ECF No. 13-3, PageID 779-784). Plaintiffs alleged that the invoices attached as Exhibit A to their Verified Complaint are "paid." (ECF No. 8-2, PageID 415, ¶ 31).

### B.   Plaintiffs Demanded that Defendants Continue to Provide Services After December 7, 2020.

According to Plaintiffs, Defendants agreed "that they would assist Detroit Axle if Detroit Axle chose to change to a new IT services provider in the future." (ECF No. 8-2, PageID 415, ¶ 28). Plaintiffs alleged that Defendants agreed to "help[] Detroit Axle transition to a new IT management provider." (ECF No. 8-2, PageID 412, ¶ 3). Plaintiffs claimed that on December 7, 2020, they notified Defendants "that it would begin transitioning to a new service provider for its IT services and requested that Defendants cooperate in this transition…" (ECF No. 8-2, PageID 416, ¶ 35; see also PageID 420 ¶ 66-67).

Plaintiffs alleged that "Defendants were not authorized to and/or exceeded their authorization to access Detroit Axle's computers…" (ECF No. 8-2, PageID 423, ¶ 89). Plaintiffs accused Defendants of "continu[ing] their conduct after Detroit Axle outright revoked Defendants' access to Detroit Axle's computer and network

systems." (ECF No. 8-2, PageID 424, ¶ 92).  Of significance is Plaintiffs' December 7, 2020 letter from counsel referenced in the Verified Complaint (ECF No. 8-2, PageID 416, ¶ 35) which advised Defendants that Plaintiffs were "in the process of discontinuing services provided by or through Detroit IT" and expected "that during DIT's off boarding that services to Detroit Axle will continue without interruption and without loss of data."  (ECF No. 13-6, PageID 799-801).

**C.    Plaintiffs Did Not Require Assistance From Detroit IT to Transition to a New IT Service Provider.**

Plaintiffs alleged that they provided Defendants "access to its entire IT infrastructure..."  (ECF No. 8-2, PageID 415, ¶ 30).  According to Plaintiffs, on December 7, 2020, Plaintiffs requested that Detroit IT provide "all passwords and accounts used for the Services."  (ECF No. 8-2, PageID 416, ¶ 36).  Plaintiffs claimed that at approximately 1:39pm on December 7, 2020, Detroit Axle's new IT service provider "began removing Defendants' access to Detroit Axle's network and computer systems."  (ECF No. 8-2, PageID 416, ¶ 38-39).  Specifically, Plaintiffs' new IT service provider removed Defendants' access from "Google Workspace, Active Directory/Windows domain, and Meraki dashboard."  (ECF No. 8-2, PageID 416, ¶ 39).  According to Plaintiffs' Chief Executive Officer (ECF No. 20-2, PageID 960), Plaintiffs needed Defendants to provide passwords to Meraki dashboard and Active Directory (ECF No. 20-2, PageID 968, ¶ 49).

**D.     Defendants Provided All Requested Credentials to Plaintiffs.**

Between February 5, 2021, and February 7, 2021, Defendants provided to Plaintiffs the passwords and credentials without which Plaintiffs claimed they could not access their "IT infrastructure."  On February 8, 2021, the parties were able to reach an interim resolution on Plaintiffs' motion for temporary restraining order (ECF No. 8) with the Court's assistance.  The agreement was placed on the record and memorialized in a stipulated order (ECF No. 24).  Defendants, through counsel, provided the requested credentials as agreed on February 11, 2021.  Plaintiffs, through counsel, confirmed receipt and have not advised of any issues with the credentials.

**II.     Analysis.**

As set forth herein, Defendants move to dismiss Plaintiffs' claims for fraud (Count III), violation of the Computer Fraud and Abuse Act (Count IV), violation of the Federal Wiretap Act (Count V), violation of the Stored Communications Act (Count VI), injunctive relief (Counts VII and VIII), common law and statutory conversion (Count XI), and civil conspiracy (Count XII).

**A.     Legal Standards.**

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Percival v. Girard*, 692 F. Supp. 2d 712,

717 (E.D. Mich. 2010).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### 1.    The Court Must Disregard Conclusory Allegations.

"Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions." *Percival*, 692 F. Supp. 2d at 717 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).  This Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombl*y, 550 U.S. at 555.  Allegations based on "information and belief" are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [Courts] to ignore when evaluating a complaint's sufficiency. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). *Iqbal* requires the Court, as a first step in its review of a complaint under a motion to dismiss, to identify and disregard conclusory allegations.  *Id*. at 663-664.  Then, accepting as true the remaining allegations, the court determines whether the claim is plausible. *Id*. at 664.

### 2. Consideration of Matters Outside the Pleadings.

When deciding a motion under Fed. R. Civ. P. 12(b)(6), "assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

> However, a court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment.

*Rondigo* at 680–81 (6th Cir. 2011) (internal citation omitted). This motion references exhibits attached to Plaintiffs' Verified Complaint (ECF No. 8-2) and other items appearing in the record that are referred to in Plaintiffs' Verified Complaint and central to Plaintiffs' claims.

### 3. Heightened Pleading Standard for Fraud Claims.

Claims alleging fraud have an even higher standard of review. To meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008). At a minimum, Plaintiffs must allege the time, place, and contents of the

misrepresentations upon which they relied. *Id.* See also *Jackson v. Segwick Claims Mgt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012) (citations omitted).

**B.    Plaintiffs Failed to Plead a Fraud Claim (Count III).**

Plaintiffs' fraud claim is deficient for several reasons. (ECF No. 8-2, PageID 422, ¶ 78-86). First, Plaintiffs did not identify when or how Defendants allegedly "made a material representation that Detroit IT installed the Detroit Axle equipment…" (ECF No. 8-2, PageID 422, ¶ 79). Plaintiffs defined "Detroit Axle Equipment" as equipment for which Plaintiffs "executed price quotes and paid for invoices." (ECF No. 8-2, PageID 415, ¶ 31). Plaintiffs did not identify which invoices include charges for equipment that was allegedly not provided or installed, or which items were allegedly charged for but not installed. In sum, Plaintiffs failed to specify which statements were fraudulent and where and when the statements were made.

Second, it is unclear whether the fraud claim is based on alleged representations of then-existing material facts or promises of future conduct. Under either, the claim must be dismissed. Plaintiffs alleged that Defendants "knew that they would not, or did not, install the Detroit Axle Equipment and additional equipment that they represented they would install and/or was installed…" (ECF No. 8-2, PageID 423-424, ¶ 83). Plaintiffs' fraud claim, at least in part, is based on Defendants' alleged unfulfilled promises to install certain equipment. "Statements

7

promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 59 Mich. App. 366, 371-72, 229 N.W.2d 456, 459 (1975) (internal citations omitted).  Plaintiffs' allegations in support of their second contract claim (count II) are substantively the same as their fraud allegations (ECF No. 8-2, PageID 74-76).

Third, Plaintiffs did not (and cannot) allege reasonable reliance.  The general basis of the fraud claim appears to be that Detroit IT attempted to invoice Plaintiffs for equipment that, according to Plaintiffs, was not installed in Plaintiffs' facilities. Defendants deny this allegation, however, Plaintiffs would be able to see which equipment was installed in their facilities and easily verify whether the items listed in the invoice were installed.  "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Industries,* 204 Mich. App 459, 464, 517 N.W.2d 235 (1994).

C.   **Plaintiffs' Claims for Violation of the Computer Fraud and Abuse Act (Count IV) and the Stored Communications Act (Count V) are Contradicted by Allegations in the Verified Complaint.**

Plaintiffs alleged that Defendants "were not authorized to and/or exceeded their authorization to access Detroit Axle's computers during the "relevant period." (ECF No. 8-2, PageID 423, ¶ 89).  Presumably, the "relevant period" is after December 7, 2020, when Plaintiffs claim to have terminated Detroit IT's services.

However, Plaintiffs repeatedly alleged in their Verified Complaint (and confirmed through various correspondence to Detroit IT) that they requested Detroit IT's "cooperation" and expected it to assist with Plaintiffs' transition to a new IT service provider.  Plaintiffs alleged that Detroit IT continued to access their computers "after Detroit Axle outright revoked Defendants' access" (ECF No. 8-2, PageID 424, ¶ 92).  However, Plaintiffs did not revoke Detroit IT's access in its December 7, 2020 "termination letter"—rather such letter referenced Detroit IT's "offboarding services" and then continued to request that Detroit IT provide services that required Detroit IT's access of Plaintiffs' computers and systems.  (ECF No. 13-6, PageID 799-801).  On December 22, 2020, Plaintiffs received—and claim to have paid— invoice 13169 (ECF No. 8-2, PageID 470) for hardware and professional services to install, configure, and test related software.  This occurred *after* December 7, 2020, when Plaintiffs allegedly "outright revoked" Detroit IT's access to their systems. Accessing a computer "without authorization" or "exceeding authorization" is a key element of a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Plaintiff recited the element and concluded that Defendants "were not authorized to and/or exceeded their authorization to access Detroit Axle's computers…" (ECF No. 8-2, PageID 425, ¶ 104), but did not support this conclusion with any facts showing that Plaintiffs revoked Detroit IT's authorization and actually

attached exhibits (including the supposed "Termination Letter") which authorized Detroit IT's access to Detroit Axle's computers.

The Stored Communications Act, 18 U.S.C. § 2701, *et seq*., prohibits *unauthorized* access of communication stored in "temporary, intermediate storage . . . incidental to electronic transmission thereof," and communications in "backup" storage. The Stored Communications Act "does not extend to emails and messages stored only on Plaintiff's personal computer." *Bailey v. Bailey*, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008). Plaintiffs' claim under the Stored Communications Act (Count VI) also failed to acknowledge that Plaintiffs provided Defendants with authorization to access its networks, computers, and systems. Plaintiffs failed to plead facts to support the "unauthorized access" element of this claim and it must be dismissed.

### D. Plaintiffs' Claim for Violation of the Federal Wiretap Act (Count V) is Based on Conclusory Allegations.

Plaintiffs' claim that Defendants "intercepted" or accessed Plaintiffs' communications in violation of the Federal Wiretap Act (Count V) are based "upon information and belief" and are merely conclusory. (ECF No. 8-2, PageID 417-418, ¶ 48; PageID 419, ¶ 56; PageID 424, ¶ 91; PageID 425 ¶ 102-103). The method Defendants allegedly used to "access and monitor" Plaintiffs' communications was "remote desktop software." Plaintiffs made this allegation based on their subjective "information and belief." "The mere fact that someone believes something to be

true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014). "Such allegations are naked assertions devoid of further factual enhancement, which contribute nothing to the sufficiency of the complaint." *Great Lakes Acquisition Corp. v. Deary*, No. 19-11502, 2019 WL 4919148, at *2 (E.D. Mich. Oct. 4, 2019), *appeal dismissed*, No. 19-2215, 2019 WL 7596302 (6th Cir. Nov. 15, 2019) (internal quotations omitted).

The allegation that Defendants "contemporaneously intercepted Plaintiffs' electronic communications via remote desktop software, and/or other software…" (ECF No. 8-2, PageID 425, ¶ 105) is a threadbare recital of an element of a claim under the Federal Wiretap Act and is nothing more than a conclusory statement insufficient to survive a 12(b)(6) motion. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

For purposes of the Federal Wiretap Act, "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). For an "intercept" to occur, "the electronic communication at issue must be acquired contemporaneously with the transmission of that communication." *Luis v. Zang*, 833 F.3d 619, 629 (6th Cir. 2016). Without any factual allegations to support

Plaintiffs' conclusion that Defendants "contemporaneously intercepted" electronic communications, Plaintiffs cannot maintain their claim.

In *Luis*, the Sixth Circuit cited with approval to *Konop v. Hawaii Airlines*, 302 F.3d 868 (9th Cir. 2002), where the Ninth Circuit held that for a communication to be intercepted it must be acquired during transmission. Detroit IT categorically denies accessing or monitoring Plaintiffs' computers beyond which is necessary to provide IT services as requested by Plaintiffs, but even improper "monitoring" of a computer would only allow the offender to access what was on Plaintiffs' computer. When an email appears in Plaintiffs' inbox, it is not in transmission, it is stored.

> [T]here is only a narrow window during which an E-mail interception may occur—the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command. Therefore, unless some type of automatic routing software is used (for example, a duplicate of all of an employee's messages are automatically sent to the employee's boss), interception of E-mail within the prohibition of [the Wiretap Act] is virtually impossible.

*United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (citing Jarrod J. White, *E–Mail @Work.com: Employer Monitoring of Employee E–Mail,* 48 Ala. L.Rev. 1079, 1083 (1997)). There is no allegation that Defendants halted or diverted the transmission of messages to or from their intended recipients or factual allegations to support the conclusion that Defendants "contemporaneously intercepted" communications.

**E.** **Plaintiffs' Claims for Injunctive Relief (Counts VII and VIII) are Moot.**

Plaintiffs' claims for injunctive relief were rendered moot by parties' stipulated order (ECF No. 24). In their first claim for injunctive relief (count VII), Plaintiffs requested an injunction prohibiting Defendants from removing equipment from Plaintiffs' facilities. (ECF No. 8-2, PageID 428-429, ¶ 126). The parties agreed to conduct a joint inventory of the equipment in Plaintiffs' possession (ECF No. 24) and any dispute regarding payment for the equipment will be resolved as part of Detroit IT's counterclaim filed contemporaneously herewith. In their second claim for injunctive relief (Count VIII), Plaintiffs requested that Defendants be ordered to provide passwords and credentials for certain accounts and to prohibit Defendants from making any alterations to those accounts. Plaintiffs' second claim for injunctive relief is contradicted by Plaintiffs' prior allegations that their new IT service provider "began removing Defendants' access to Detroit Axle's network and computer systems" (ECF No. 8-2, PageID 416, ¶ 38-39) and removed Defendants' access from "Google Workspace, Active Directory/Windows domain, and Meraki dashboard." (ECF No. 8-2, PageID 416, ¶ 39). Plaintiffs did not provide any explanation for how it is that its new IT service provider, Auxiom, was able to "remove Defendants' access" without any credentials or participation from Detroit IT on December 7, 2020, but on January 22, 2021, was somehow unable to do the exact same thing and desperately needed Detroit IT's passwords and credentials to

access any aspect of Plaintiffs' IT "infrastructure." Despite it being completely unnecessary for Plaintiffs to take control of or access their network or systems, Defendants provided all passwords and credentials requested by Plaintiffs and did not retain any access to Plaintiffs' systems. Plaintiffs obtained the relief requested in counts VII and VIII and said claims should be dismissed as moot.

### F. Plaintiffs' Conversion Claim (Count XI) is to Recover Intangible Property Incapable of Being Converted.

Plaintiffs' claim that Defendants "converted" Plaintiffs' network and computer systems, which would be considered "general intangibles" under MCL § 440.0102(pp). Plaintiffs failed to allege whether the network and systems are tangible personal property capable of being converted or intangible personal property that falls within one of the exceptions to the general rule that intangible personal property cannot be converted.

> Although other jurisdictions have liberalized the bar to actions for conversion of intangible property, Michigan jurisprudence has long held that intangible property cannot be converted.

*Qualite Sports Lighting, LLC v. Ortega*, 2019 WL 7582823, at *7 (W.D. Mich. Sept. 10, 2019) (quoting Anthony P. Patti, *Intentional Torts, in* Torts: Michigan Law & Practice § 3.104 (Linda Miler Atkinson, Hon. Helene N. White & Noreen L. Slank ed., Sept. 2014)). In fact, "[m]ost states ... have rejected or at least qualified intangible conversion, as do most states in the Sixth Circuit." *Id.* In

*Pompy v. Monroe Bank & Tr.,* No. 19-10334, 2020 WL 6298102, at \*12 (E.D. Mich. Aug. 5, 2020), *report and recommendation adopted,* No. 19-10334, 2020 WL 6286299 (E.D. Mich. Oct. 27, 2020), the Court dismissed the plaintiff's claim that the defendant converted the plaintiff's image in the form of a video. "Plaintiff does not state an allegation that Howell exhibited dominion over any of his personal property, and intangible property, such as one's image, cannot be converted." *Id.* Plaintiffs did not allege the nature of the property supposedly converted or whether it is consistent with the general rule in Michigan or the recognized exceptions. See *Sarver v. Detroit Edison Co.,* 225 Mich. App. 580, 586, 571 N.W.2d 759, 762 (1997).

Plaintiffs' conversion and breach of contract (count II) claim are one and the same. In support of their contract claim, Plaintiffs alleged that the parties' agreement required Detroit IT to provide assistance to Detroit Axle to transition to its new IT service provider (ECF No. 8-2, PageID 420, ¶ 66) and that Detroit IT breached the agreement by failing to "turn over access and/or control of Detroit Axle's computer and network systems (ECF No. 8-2, PageID 420-421, ¶ 68-69). Conversion claims cannot be brought where the property right alleged to have been converted arises entirely from the plaintiff's contractual rights. *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014) (internal quotation omitted). To maintain a conversion claim, the defendant's conduct must constitute a breach of a

15

duty separate and distinct from the breach of contract. *Id.* Plaintiffs did not allege the existence of any duty other than the contractual duties they claim to be part of the parties' "agreement."

### G. Plaintiffs' Claim for Civil Conspiracy (Count X) is Precluded by the Intracorporate Conspiracy Doctrine.

Plaintiffs alleged that Defendants, being Detroit IT, LLC, and its member and owner, Defendant Eric Grundlehner, "entered into an agreement" or "acted in concert" to harm Plaintiffs. Plaintiffs' claim ignores the intracorporate conspiracy doctrine. "[T]here can be no conspiracy between a corporation and its directors if the directors are acting on behalf of the corporation." *Blair v. Checker Cab Co.,* 219 Mich. App. 667, 674, 558 N.W.2d 439, 442 (1996); see also *Verma v. Giancarlo*, No. 208534, 2000 WL 33395243, at *8 (Mich. Ct. App. Dec. 12, 2000) ("[A] corporation cannot ordinarily conspire with its agents or employees. These rules have been collectively referred to as the 'intracorporate conspiracy doctrine.'") The Sixth Circuit held that the doctrine provides that "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 615 (6th Cir. 2015). Plaintiffs did not allege that Defendant Grundlehner was acting beyond the scope of his employment or conspiring with anyone other than his entity, Detroit IT. Plaintiffs chose to name Defendant Grundlehner individually but failed to allege any facts justifying this decision. There are no allegations that Detroit IT is a mere

instrumentality of Grundlehner.  Absent proofs of fraud, sham, or other improper use of the corporate form, there is no justification for disregarding the separate existence of an entity.  See *Gottlieb v. Arrow Door Co.,* 364 Mich. 450, 452, 110 N.W.2d 767 (1961).

## III.    Conclusion and Request for Relief.

Plaintiffs' Verified Complaint (ECF No. 8-2) is riddled with conclusory allegations and contradictory statements.  Plaintiffs failed to meet the basic pleading standards of Fed. R. Civ. P. 8 and *Iqbal* and *Twombly* and attempted to disguise its contractual claims as various torts without alleging any distinct duty or meeting the heightened pleading requirements of Fed. R. Civ. P. 9(b).  For the foregoing reasons, Defendants request that this Honorable Court grant this motion, dismiss Plaintiffs' Verified Complaint (ECF No. 8-2) with prejudice, award Defendants their costs and attorney fees incurred in filing this motion, and such other and further relief as is consistent with equity and good conscience.

Respectfully submitted,

**JOELSON ROSENBERG, PLC**

By:*/s/ David W. Warren*
David W. Warren (P32449)
Peter W. Joelson (P51468)
Emily R. Warren (P76675)
Attorneys for Defendants
30665 Northwestern Hwy., Suite 200
Farmington Hills, Michigan 48334
(248) 855-2233

17

Dated:  February 19, 2021                    (248) 855-2388 (Fax)
dwarren@jrlawplc.com
pwj@jrlawplc.com
ewarren@jrlawplc.com


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document along with a Certificate of Service was electronically filed on February 19, 2021, with the Court's e-filing system, which will send notification of such filing to all attorneys of record.

*/s/ Emily R. Warren*
Emily R. Warren

18