UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan corporation;
and DETROIT AXLE QSSS, INC., a Michigan
corporation,

    Plaintiffs,

v.

DETROIT IT, LLC, and ERIC
GRUNDLEHNER.,

    Defendants,

and

DETROIT IT, LLC,

    Counterclaim Plaintiff,

v.

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan corporation;
and DETROIT AXLE QSSS, INC., a Michigan
corporation,

    Counterclaim Defendants.

Case No. 21-cv-10163
Hon. Stephanie Dawkins Davis
Magistrate Anthony P. Patti

## DETROIT IT, LLC'S COUNTERCLAIM

NOW COMES Defendant/Counterclaim Plaintiff Detroit IT, LLC, ("Detroit IT") by and through its attorneys, and for its Counterclaim against

1

Plaintiff/Counterclaim Defendants Axle of Dearborn, Inc., d/b/a Detroit Axle, Detroit Axle, Inc., and Detroit Axle QSSS, Inc. (together "Detroit Axle") states as follows:

## Parties, Jurisdiction, Venue

1. Detroit IT is a Michigan limited liability company located in Oakland County, Michigan.

2. Axle of Dearborn, Inc., d/b/a Detroit Axle, is a Michigan corporation with its resident address at 2000 West 8 Mile, Ferndale, Michigan.

3. Detroit Axle, Inc., is a Michigan corporation with its resident address at 20446 W. Warren Ave., Detroit, Michigan.

4. Detroit Axle QSSS, Inc., is a Michigan corporation with its resident address at 2000 West 8 Mile, Ferndale, Michigan.

5. The amount in controversy is in excess of $185,000.00, exclusive of attorney fees, interest, and costs.

6. The events and occurrences giving rise to this cause of action occurred in Oakland County, Michigan.

7. This Counterclaim is compulsory pursuant to Fed. R. Civ. P. 13(a) because it arises out of the same transaction or occurrence that forms the basis of Plaintiff's Verified Complaint (ECF No. 8-2).

8. This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367.

9. Jurisdiction and venue are in all other respects proper in this Court.

## General Allegations

10. Detroit IT is in the information technology ("IT") business and provides IT management and consulting services (the "Services") to its customers.

11. On April 28, 2020, Detroit Axle signed Price Quote 21372 (Exhibit 1) for a variety of IT services and equipment.

12. Detroit Axle received a discount for agreeing to a three-year term (Exhibit 1).

13. By signing Price Quote 21372, Detroit Axle acknowledged and agreed to be bound by the Terms and Conditions found on Detroit IT's website. (Exhibit 1; Exhibit 2, Terms and Conditions).

14. Under the Terms and Conditions, Detroit Axle is obligated to make timely payments for Detroit IT's services and equipment ordered pursuant to the Price Quotes.

15. Section 5 of the Terms and Conditions (Exhibit 2) specifies that, unless otherwise agreed, payment is due within 30 days of receipt of the invoice. (Exhibit 2, ¶ 5(a)).

16. The Terms and Conditions provide a procedure for a customer, such as Detroit Axle, to dispute Detroit IT's invoices or specific charges. (Exhibit 2, ¶ 5(b)).

17. Detroit Axle did not dispute any of Detroit IT's invoices or charges in writing as required under the Terms and Conditions or as stated on the invoices.

18. Section 5(c) of the Terms and Conditions expressly permit Detroit IT to suspend services until paid in full.

19. Section 12 of the Terms and Conditions govern termination of the agreement by either party under a variety of circumstances.

20. Section 12(a) permits either party to terminate the agreement upon occurrence of a material breach if said breach "is not cured within 30 days after receipt of written notice thereof."

21. Section 12(b) of the Terms and Conditions provides that Detroit Axle shall pay an early termination fee equal to "all fees, including all applicable taxes, set forth in each Service Order being terminated which would otherwise be due through the end of the entire Term under such Service Orders" within ten days of the effective date of termination.

22. On May 19, 2020, Detroit Axle signed Price Quote 21390 (Exhibit 3), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

23. On June 11, 2020, Detroit Axle signed Price Quote 21392 (Exhibit 4), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

24. On July 7, 2020, Detroit Axle signed Price Quote 21434 (Exhibit 5), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

25. On July 9, 2020, Detroit Axle signed Price Quote 21437 (Exhibit 6), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

26. On July 15, 2020, Detroit Axle signed Price Quote 21450 (Exhibit 7), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

27. On July 28, 2020, Detroit Axle signed Price Quote 21460 (Exhibit 8), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

28. On July 30, 2020, Detroit Axle signed Price Quote 21465 (Exhibit 9), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

29. On July 31, 2020, Detroit Axle signed Price Quote 21467 (Exhibit 10), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

30. On August 12, 2020, Detroit Axle signed Price Quote 21462 (Exhibit 11), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

31. On September 8, 2020, Detroit Axle signed Price Quote 21445 (Exhibit 12), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

32. On November 16, 2020, Detroit Axle signed Price Quote 21565 (Exhibit 13), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

33. On December 17, 2020, Detroit Axle signed Price Quote 21594 (Exhibit 14), and again acknowledged and agreed to be bound by the Terms and Conditions (Exhibit 2).

34. The Price Quotes (Exhibits 1, 3-14) and the Terms and Conditions (Exhibit 2) comprise the parties' sole, written agreements from April 28, 2020, to December 17, 2020.

35. After December 7, 2020, Detroit Axle requested that Detroit IT perform certain services on a "COD" basis, meaning that Detroit IT would perform *a la carte*

services as requested by Detroit Axle in exchange for payment for said services "immediately." (Exhibit 15, Emails of December 9-13, 2020; Exhibit 16, Emails December 16-17, 2020).

36. After December 7, 2020, in addition to Price Quote 21594 (Exhibit 14), Detroit Axle demanded that Detroit IT perform various services via email, text message, and "help tickets." (Exhibit 17)

37. Detroit IT regularly invoiced Detroit Axle for equipment and services provided pursuant to the Price Quotes (Exhibits 1, 3-14). Detroit IT's unpaid invoices are attached as Exhibit 18.

38. Detroit IT provided in excess of $169,564.07 in services and equipment to Detroit Axle for which Detroit Axle has not paid (Exhibit 18).

39. Detroit Axle did not protest or object to any of Detroit IT's invoices within five days of receipt, as stated at the bottom of each invoice.

40. Detroit Axle did not protest or object to any of Detroit IT's invoices until it filed its baseless lawsuit (ECF No. 8-2).

41. On October 30, 2020, Detroit IT asked Detroit Axle for an update on payment for invoices 12808, 12809, 12730, 12729, 12728, 12727, and 12726 (Exhibit 19, Emails RE: Unpaid Invoices).

42. Detroit Axle represented that it would "make another payment next week and will focus on these invoices as a priority." (Exhibit 19).

43. According to its Verified Complaint, Detroit Axle claims to have paid invoices 12808, 12809, 12727, and 12726.

44. However, Detroit Axle did not pay invoices 12730, 12729, and 12728, despite promising to "focus on these invoices as a priority."

45. On November 24, 2020, nearly a month after Detroit Axle promised payment, Detroit IT again requested payment for invoices 12730, 12729, and 12728, along with 12724, 12639, 12641, 12642, 12660, 12716, 12731, 12836, 12838, and 12847 (Exhibit 19).

46. The next day, Detroit Axle represented that once it had the total amount due, it would "work with the team here to come up with a plan." (Exhibit 19).

47. As of date herein, Detroit Axle has not paid any of the invoices attached as Exhibit 18.

48. As of the date herein, Detroit Axle has not paid Detroit IT for the services performed after December 7, 2020.

## COUNT I
## BREACH OF CONTRACT
**(Price Quotes and Terms and Conditions)**

49. Detroit IT incorporates the foregoing allegations as if fully restated herein.

50. The Price Quotes and Terms and Conditions are valid and binding written contracts between Detroit IT and Detroit Axle.

51. Detroit Axle did not give Detroit IT written notice of any material breach or advise of its intention to terminate the agreement due to any material breach by Detroit IT.

52. The first invoice sent to Detroit Axle was Invoice 12700 sent on May 1, 2020, and payment was due within thirty days at the latest (Exhibit 2, 5(a)).

53. As of the date herein, Detroit Axle has not paid Invoice 12700, or the other invoices attached as Exhibit 18.

54. As of the date herein, Detroit Axle has not paid the early termination fee required by the Terms and Conditions (Exhibit 2, 12(b)).

55. Detroit Axle's failure and refusal to pay the invoices attached as Exhibit 18 and the early termination fee are material breaches of the parties' agreement.

56. Detroit Axle's failure and refusal to pay the invoices attached as Exhibit 18 and the early termination fee have caused Detroit IT to incur significant damages in excess of $185,000.00.

## COUNT II
## BREACH OF CONTRACT
### (December 9, 2020 Agreement)

57. Detroit IT incorporates the foregoing allegations as if fully restated herein.

58. On or about December 9, 2020, Detroit Axle admitted that it owed Detroit IT $100,000.00 and agreed to pay $10,000 per month until paid in full. (Exhibit 15).

59. On or about December 13, 2020, Detroit Axle agreed that any service provided by Detroit IT would be on a "COD" basis and "payed [sic] for immediately." (Exhibit 15).

60. Detroit IT performed services for Detroit Axle on a "COD" basis as demanded by Detroit Axle, but has not been paid for said services.

61. As of the date herein, Detroit Axle owes Detroit IT $791.44 for services provided on a "COD" basis after December 7, 2020.

62. Detroit Axle breached the parties' agreement for services after December 7, 2020, by failing and refusing to pay for said services.

63. As a direct and proximate result of Detroit Axle's breaches and defaults, Detroit IT has incurred damages.

## COUNT III
## CONVERSION

64. Detroit IT incorporates the foregoing allegations as if fully restated herein.

65. Detroit IT provided certain equipment and other personal property to Detroit Axle in order to perform the services under the parties' agreement.

66. Detroit IT provided the equipment identified in Exhibit 20, valued at approximately $37,976.66.

67. The equipment listed in Exhibit 20 is in Detroit Axle's possession and control, despite the fact that Detroit Axle purportedly "terminated" the contract with Detroit IT.

68. Detroit IT has requested return of its equipment, but Detroit Axle refused.

69. Detroit IT also provided equipment to Detroit Axle pursuant to the Price Quotes.

70. Detroit Axle has not paid for some of the equipment it contracted to purchase from Detroit IT, identified in Exhibit 21.

71. Detroit Axle has not paid for the items in Exhibit 21 and has no right or ownership interest in these items.

72. Detroit IT purchased the items in Exhibit 21 and is the owner of said items.

73. Detroit IT demanded return of its equipment, but Detroit Axle refused.

74. Detroit Axle continues to exercise dominion and control over Detroit IT's equipment identified in Exhibits 20 and 21 and to deprive Detroit IT of use of its property for Detroit Axle's benefit.

75. Detroit Axle converted Detroit IT's property and is liable to Detroit IT for damages under common law and treble damages pursuant to MCL § 600.2919a.

## COUNT IV
## UNJUST ENRICHMENT

76. Detroit IT incorporates the foregoing allegations as if fully restated herein.

77. Detroit Axle received the benefit of the equipment and services provided by Detroit IT as stated in the Price Quotes (Exhibits 1; 3-14) and help tickets (Exhibit 17).

78. Detroit IT provided the equipment and services to Detroit Axle to Detroit IT's detriment and based on Detroit Axle's representations and promises that it would pay Detroit IT for the equipment and services.

79. Detroit Axle has been unjustly enriched by receiving the value of the equipment and services from Detroit IT.

80. It would be fundamentally unfair and unjust for Detroit Axle to receive and retain the benefit of Detroit IT's equipment and services without payment to Detroit IT.

81. As a direct and proximate result, Detroit IT has suffered and will continue to suffer damages.

## COUNT V
## FRAUDULENT INDUCEMENT

82. Detroit IT incorporates the foregoing allegations as if fully restated herein.

83. Detroit Axle promised Detroit IT that it would fulfill its obligations under the Price Quotes (Exhibits 1; 3-14).

84. As further inducement to continue to provide services and equipment, on or about December 9, 2020, Detroit Axle admitted that it owed Detroit IT $100,000.00 and agreed to pay $10,000 per month until paid in full.

85. As a result of the representations, Detroit IT provided the services and equipment detailed in invoices 12730, 12729, and 12728, along with 12724, 12639, 12641, 12642, 12660, 12716, 12731, 12836, 12838, and 12847 (Exhibit 19).

86. Detroit Axle's representations made when entering into the Price Quotes were false.

87. Detroit Axle made these representations knowing they were false or made them recklessly without knowledge of their truth and as a positive assertion.

88. Detroit Axle made these representations with the intent that Detroit IT would rely on them.

89. Detroit IT, in fact, did rely on Detroit Axle's representations in this regard.

90. Detroit Axle has not fulfilled its obligations under the Price Quotes (Exhibits 1; 3-14) or December 9, 2020 agreement.

91. Detroit IT has been damaged as a result of its reliance on Detroit Axle's representations in at least the amount of $405,803.79, plus costs and attorney fees incurred.

WHEREFORE, Detroit IT respectfully requests this Honorable Court enter judgement in its favor and against Detroit Axle in an amount equal to the value of the services and equipment provided to Detroit Axle plus all early termination fees, taxes, interest, and other costs, treble damages pursuant to MCL § 600.2919a, Detroit IT's attorney fees and costs so wrongfully incurred in having to bring this Counterclaim, and such other and further relief as is consistent with equity ang good conscience.

                                                  Respectfully submitted,

                                                  By: /s/ *David W. Warren*
                                                  David W. Warren (P32449)
                                                  Peter W. Joelson (P51468)
                                                  Jason C. Yert (P67144)
                                                  Emily Warren (P76675)
                                                  Joelson Rosenberg, PLC
                                                  30665 Northwestern Hwy., Ste 200
                                                  Farmington Hills, MI  48334
                                                  (248) 626-9966 fax: (248) 855-2388
                                                  dwarren@jrlawplc.com
                                                  pwj@jrlawplc.com
                                                  jyert@jrlawplc.com
                                                  ewarren@jrlawplc.com

Dated: February 19, 2021

## **PROOF OF SERVICE**

The undersigned certifies that on February 19, 2021, the foregoing document was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as disclosed on the pleadings via the Court's ECF system.

Dated: February 19, 2021                                   /s/ Emily R. Warren
                                                                              Emily R. Warren