# **EXHIBIT 2**

# DETROIT IT, LLC

## TERMS AND CONDITIONS OF SERVICE

1. <u>Definitions</u>.  Terms used, but not otherwise defined in these Terms and Conditions, shall have the following meanings:

    (a)     "*Agreement*" means these Terms and Conditions, the AUP, each Service Order and any other document, whether expressed verbally, in written form or electronic commerce, relating to the Services to be provided by Service Provider.

    (b)     "*Customer*" means the entity or person identified on a Service Order.

    (c)     "*Customer Data*" means all data, materials, documentation, manuals, guidelines, business processes, methodologies, database rights, designs, drawings, websites or other items licensed or owned by Customer and supplied to Service Provider pursuant to the Agreement.

    (d)     "*Effective Date*" means the date on which the Customer accepts the Agreement by clicking or checking the box presented with the Agreement, installing and/or using the Services.

    (e)     "*Services*" means the managed information technology and other services provided by Service Provider to Customer as specifically set forth in a Service Order.

    (f)     "*Service Order*" means orders for Services on Service Provider's standard service order forms, quotes, invoices, and/or professional services engagement agreements.  Each Service Order will contain specific provisions with respect to prices, features, description of service, duration and other terms as appropriate.

    (g)     "*Service Provider*" means Detroit IT, LLC, a Michigan limited liability company.

    (h)     "*Terms and Conditions*" means these Terms and Conditions of Service, as amended from time to time, which are expressly incorporated into the Agreement by this reference.

2. <u>Application</u>.  Any document submitted by Customer to Service Provider confirming its intention to purchase Services described in the Agreement (e.g., purchase orders or releases) will be deemed to constitute a confirmation and acceptance of the Agreement, even if such document states terms in addition to or different from those in the Agreement.  All agreements between Service Provider and Customer will be solely under the terms and conditions of the Agreement, and Service Provider objects to any and all such additional or different terms contained in any document submitted to Service Provider by Customer.  Any execution by Service Provider of any other document submitted by Customer in connection with the purchase of Services does not constitute acceptance of or agreement to any terms and conditions in addition to or different from those contained in the Agreement, but will constitute only acknowledgment of receipt of such document.  In addition, notwithstanding any terms contained in any documents submitted by Customer in connection with the purchase of Services described under the Agreement, the acceptance of delivery by Customer of Services described in the Agreement will constitute a course of conduct constituting Customer's agreement to the terms and conditions of the Agreement, to the exclusion of any additional or different terms and conditions.

3. <u>Term</u>.  The term of the Agreement shall commence on the Effective Date and shall continue in effect for the period specified on the Service Order.  Thereafter, the Agreement shall automatically renew for successive three (3) year periods unless Customer notifies Service Provider in writing of its desire not to renew the Agreement at least ninety (90) days prior to the expiration of the then-current term. The initial term and any and all renewal terms are referred to herein as the "*Term*". Notwithstanding the foregoing, Customer acknowledges and agrees that in the event Customers signs any additional Service Order following the Effective Date of the Agreement (each, an "*Additional Service Order*"), the Effective Date for all existing Service Orders shall be adjusted, and the initial Term of the Agreement shall be deemed to have commenced as of, the date on which Customer executed the Additional Service Order.

4. <u>Service Fees</u>.

(a) <u>Quotations</u>.  Written price quotations are valid for a period of thirty (30) days unless otherwise noted by Service Provider.  Service Provider will have the right to withdraw any quote which has not been accepted by Customer within such thirty (30) day time period.

(b) <u>Monthly Recurring Charges</u>.  Installation and all other non-recurring charges, and monthly recurring charges will be set at the rates set forth in the specific Service Order.  Except for usage-based Services, which are billed in arrears, the Services are billed one (1) month in advance and the first billing cycle may include a partial month and full month of Services. All fees and charges are payable for the duration of the Term, regardless of whether Customer actually uses the Services.

(c) <u>Non-Recurring Charges</u>.  Non-recurring charges will be due from Customer upon signing of the applicable Service Order.

(d) <u>Taxes and other Fees</u>.  Prices established in the Agreement and the applicable Service Order are exclusive of taxes and other fees which may be imposed on Service Provider or Customer for the provision or use of the Services. Customer will pay such taxes and other fees, except for Service Provider's U.S. federal and state income tax.

(e) <u>Annual Increase</u>.  Rates and fees charged to Customer under the Agreement are be subject, in the sole discretion of Service Provider, to an annual increase not to exceed five percent (5%) of such rates and fees during the preceding year.

5. <u>Payment Terms; Suspension of Services</u>.

(a) <u>Payment Terms</u>.  Unless otherwise set forth herein or as specifically agreed in writing by Service Provider, all invoiced fees are due and payable to Service Provider in United States dollars, without setoff or other deductions or charges, net thirty (30) days of Service Provider's invoice. Any amounts due by Customer to Service Provider which are unpaid on or after thirty (30) days of Service Provider's invoice will bear interest at a rate of one and one-half percent (1.5%) per month, or the maximum rate permitted by law, whichever is lower, from the date such payment was due until the date paid.  The accrual or payment of any interest as provided above will not constitute a waiver by Service Provider of any rights or remedies in connection with a default by Customer.  Customer will pay all court costs, attorneys' fees, and other costs incurred by Service Provider in collecting past due amounts, including interest.

(b) <u>Disputed Payments</u>.  In the event Customer in good faith disputes any of Service Provider's charges, Customer shall (i) promptly pay all undisputed and disputed charges, and (ii) notify Service Provider in writing of any such disputed amounts within thirty (30) days from when payment was due, identifying in reasonable detail its reasons for the dispute and the nature and amount of the dispute.  All amounts not timely and appropriately disputed shall be deemed final and not subject to further dispute.  Service Provider will review the amounts in dispute within (10) business days after receipt of notice of dispute.  If Service Provider determines that Customer was charged or billed in error, a credit for the amount charged or billed incorrectly will be made to Customer's next payment.

(c) <u>Suspension or Termination of Services</u>.  If payment in full for Services performed under any Service Order (other than for payments validly disputed by Customer in good faith) is not received on its due date, Service Provider shall have the right to suspend Services until such time as Customer has paid such charges in full, including any late fees and interest.  Following payment of all outstanding charges (including late fees and interest), Service Provider shall immediately reinstate any suspended Services.  Failure by Customer to pay for such suspended Services within seven (7) days after any suspension shall be deemed to constitute a termination of the Services and the applicable Service Order.  At such termination, all remaining payments to Service Provider under the such Service Order shall be immediately due and payable. No cancellation or termination under this Section shall relieve Customer of its obligations to pay for Services under any Service Order not so cancelled or terminated.

6. <u>Responsibilities of Customer</u>.

(a) <u>License Grant</u>.  Customer hereby grants to Service Provider a worldwide, nonexclusive, nonsublicensable, nontransferable, royalty-free license during the Term to reproduce, distribute, publicly perform, publicly display, and digitally perform the Customer Data for the sole purpose of providing Services.  Customer shall own and retain all right,

title, and interest in and to the Customer Data (including, without limitation, any modifications thereto made by Service Provider), and Service Provider shall obtain no other right, title or interest in the Customer Data except for the foregoing license.  Any Customer Data or intellectual property developed by Customer during the performance of Services shall belong to Customer.  Any data collected by Service Provider (or Customer) during the performance of Services shall be owned by Customer.

(b) <u>Customer Covenant</u>.  During the Term of the Agreement, Customer shall not knowingly distribute any Customer Data that: (a) infringes on the intellectual property rights of any third party or any rights of publicity or privacy; (b) violates any law, statute, ordinance, or regulation; (c) is defamatory, trade libelous, unlawfully threatening, or unlawfully harassing; (d) is obscene, pornographic, or indecent; or (e) fails to adhere to Service Provider's AUP (defined below).

(c) <u>EULA's</u>.  Customer represents and warrants to Service Provider that Customer has purchased a sufficient number of licenses for Service Provider's use in providing the Services as required by any applicable EULAs (End User License Agreements) on all servers, desktops and laptops of Customer.  Customer is solely responsible for timely acquiring any such licenses and any subsequent licenses for additional servers, desktops and laptops as may be necessary.  Customer will indemnify and hold harmless Service Provider for any installation, configuration or use of software that is not appropriately licensed.  Customer acknowledges that is it solely responsible and liable for all licensing of software that Customer purchases or uses.

(d) <u>Data Control</u>.  Customer is responsible for its Customer Data.  Customer is responsible for maintaining its own procedures for the reconstruction of lost or altered files, backup or saving data or programs to the extent deemed necessary by Customer and for actually reconstructing any lost or altered files, data or programs.  Service Provider assumes no responsibility for the protection of Customer Data.  Service Provider is not liable for damage to software or data caused by the Services.  Customer agrees that it shall have the sole responsibility for safeguarding the software and data.  Service Provider is not liable for software damage due to any outside factor (i.e., software virus, etc.).

(e) <u>Network Security</u>.  Customer accepts ultimate responsibility and liability for the protection and preservation of Customer Data and Customer's computer network through the creation and supervision of a company-wide network security operational plan.  Customer acknowledges that Service Provider is neither a bailee nor a fiduciary of Customer Data, and that network security is Customer's principal and fundamental responsibility and is dependent on the education, training and cooperation of every one of Customer's employees, agents and contractors who have access to Customer's network.

(f) <u>Backup Services</u>.  In the event that Customer purchases backup services from Service Provider, Service Provider shall use reasonable skill and due care in providing such backup services, provided that, TO THE GREATEST EXTENT PERMISSIBLE BY APPLICABLE LAW, SERVICE PROVIDER DOES NOT GUARANTEE OR WARRANT THAT ANY DATA CUSTOMER MAY STORE, ACCESS OR BACK UP WILL NOT BE SUBJECT TO INADVERTENT DAMAGE, CORRUPTION, LOSS OR REMOVAL, AND SERVICE PROVIDER SHALL NOT BE RESPONSIBLE SHOULD SUCH DAMAGE, CORRUPTION, LOSS OR REMOVAL OCCUR.  It is Customer's responsibility to maintain appropriate alternate backup of Customer Data.  In respect of any backup services provided, Customer shall be provided with a quota of storage space with Service Provider.  If such quota has been met or exceeded, the backup of Customer Data will fail.  Service Provider will open a ticket requesting Customer to upgrade its existing quota, provided if Customer fails to make any such upgrade with additional storage space and/or remove Customer Data to fall within the quota, the backup service will fail.  Any restoration of Customer Data can only be restored from the last completed backup.

7. <u>DISCLAIMER OF WARRANTIES; ASSUMPTION OF RISK</u>.  CUSTOMER ASSUMES TOTAL RESPONSIBILITY AND RISK FOR CUSTOMER'S USE OF THE SERVICES PROVIDED BY SERVICE PROVIDER. CUSTOMER ACKNOWLEDGES THAT THE INTERNET IS ACCESSIBLE BY PERSONS WHO MAY ATTEMPT TO BREACH THE SECURITY OF SERVICE PROVIDER AND/OR CUSTOMER'S NETWORK FACILITIES.  SERVICE PROVIDER HAS NO CONTROL OVER AND EXPRESSLY DISCLAIMS ANY LIABILITY OR RESPONSIBILITY WHATSOEVER FOR THE CONTENT OR MATERIALS TRANSMITTED OVER THE INTERNET, SERVICE INTERRUPTIONS ATTRIBUTABLE TO CUSTOMER'S NETWORK AND/OR CUSTOMER'S EQUIPMENT FAILURES, OR ANY OTHER SUCH CAUSES.

SERVICE PROVIDER WILL NOT BE LIABLE TO CUSTOMER AND CUSTOMER ASSUMES ALL RISK FOR ANY LOSS OR DAMAGE ARISING IN WHOLE OR IN PART FROM OR RELATING TO: (A) USE OF ANY THIRD-PARTY HARDWARE, SOFTWARE, INFORMATION OR MATERIALS NOT APPROVED OR RECOMMENDED BY SERVICE PROVIDER; (B) VIRUSES, HACKERS OR OTHER MALICIOUS OR ACCIDENTAL DESTRUCTION OF SYSTEMS OR DATA, INCLUDING DESTRUCTION BY CUSTOMER OR CUSTOMER'S EMPLOYEES OR REPRESENTATIVES; (C) ANY EVENT BEYOND SERVICE PROVIDER'S OR CUSTOMER'S CONTROL INCLUDING POWER FAILURE, NATURAL DISASTER, BUILDING MODIFICATIONS OR OTHER EVENTS OF A MAGNITUDE OR TYPE FOR WHICH PRECAUTIONS ARE NOT GENERALLY TAKEN WITH RESPECT TO IT SERVICE INDUSTRY; AND (D) CUSTOMER'S FAILURE TO PERFORM ONE OR MORE OF CUSTOMER'S OBLIGATIONS SET OUT IN THE AGREEMENT.  CUSTOMER HAS FULL AND EXCLUSIVE RESPONSIBILITY FOR UNDERSTANDING AND ENSURING COMPLIANCE WITH ANY REGULATORY, LEGAL, OR CONTRACTUAL OBLIGATIONS RELATED TO DATA CREATED, GENERATED OR HELD BY CUSTOMER (INCLUDING ALL CUSTOMER DATA HELD OR BACKED UP ON CUSTOMER'S BEHALF BY SERVICE PROVIDER).

EXCEPT AS EXPRESSLY PROVIDED IN SERVICE PROVIDER'S SLA, ALL SERVICES ARE FURNISHED BY SERVICE PROVIDER AND ACCEPTED BY CUSTOMER "AS IS," "WITH ALL FAULTS," AND WITHOUT ANY WARRANTY WHATSOEVER.  ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF TITLE, NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ARE SPECIFICALLY EXCLUDED AND DISCLAIMED BY SERVICE PROVIDER.  SERVICE PROVIDER DOES NOT WARRANT THAT ANY PRODUCT OR SERVICE WILL MEET CUSTOMER'S REQUIREMENTS OR THAT IT WILL BE UNINTERRUPTED OR ERROR FREE.  NO ADVICE OR INFORMATION GIVEN BY SERVICE PROVIDER, ITS AFFILIATES, ITS CONTRACTORS, ITS AGENTS, OR THEIR RESPECTIVE EMPLOYEES SHALL CREATE A WARRANTY OF ANY TYPE OR NATURE.

8.      <u>LIMITATION ON LIABILITY</u>.  IN NO EVENT WILL SERVICE PROVIDER BE LIABLE TO CUSTOMER OR ANY OTHER PERSON FOR ANY LOST PROFITS, LOST SAVINGS, LOST DATA OR SPECIAL, CONSEQUENTIAL, PUNITIVE OR INCIDENTAL DAMAGES, WHETHER ARISING OUT OF OR RELATING TO THE AGREEMENT OR ANY PRODUCT OR SERVICE FURNISHED OR TO BE FURNISHED UNDER THE AGREEMENT OR OTHERWISE, EVEN IF SERVICE PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. NOTWITHSTANDING ANYTHING IN THE AGREEMENT TO THE CONTRARY, THE MAXIMUM AGGREGATE MONETARY LIABILITY OF SERVICE PROVIDER AND ANY OF ITS EMPLOYEES, AGENT, SUPPLIERS OR AFFILIATES, UNDER ANY THEORY OF LAW (INCLUDING BREACH OF CONTRACT, TORT, STRICT LIABILITY AND INFRINGEMENT) SHALL NOT EXCEED AN AMOUNT EQUAL TO THE SUM OF THE PAYMENTS MADE BY CUSTOMER TO SERVICE PROVIDER DURING THE THREE (3) MONTHS IMMEDIATELY PRECEDING THE EVENT FOR WHICH LOSSES OR DAMAGES ARE CLAIMED.

9.      <u>Third Party Products and Services</u>.  Customer acknowledges that Service Provider does not manufacture hardware or software, or provide power or Internet services.  Service Provider will have no responsibility for the adequacy or performance of (i) any third party software provided to Service Provider under the Agreement; (ii) any hardware; and (iii) any services or equipment provided by any third party (collectively, "***Third-Party Products***").  All Third-Party Products provided by Service Provider are provided on an "as is" basis except as expressly stated in the Agreement.  Service Provider does not take responsibility for third-party warranties or for any effect that the Services may have on those warranties. Except as agreed to in writing between Customer and Service Provider, Third-Party Products are exclusively subject to the terms and conditions agreed upon between the third party and Customer, if any.  Service Provider has no liability for Third-Party Products and Customer must look exclusively to the third party for any damages or liability with respect to the provision of any Third-Party Products.  Except as otherwise specifically agreed to in a Service Order, Customer authorizes Service Provider (or otherwise obtains the right for Service Provider) to copy, install and modify, when necessary and as required by the Service Order, all Third-Party Products to be used in the Services or to be copied or stored for later reinstallation of a backup system or data.  Customer represents and warrants to Service Provider that Customer has obtained any and all licenses, consents, regulatory certifications and approvals required to enable Service Provider and its subcontractors or employees the right or license to access, copy, distribute, use, modify (including creating derivative works) or install any Third-Party Products to be used in the Services, without infringing the ownership or intellectual property rights of the providers or owners of such Third-Party Products.

10. <u>Equipment</u>.

(a) If Service Provider provides and installs any telephony, computer or network equipment (the "***Equipment***") at Customer's location that is not otherwise paid for by Customer, the Equipment will remain the sole property of Service Provider regardless of where located or attached.  Customer will not rearrange or move or disconnect the Equipment and is responsible for any damage to or loss of the Equipment.  Customer will obtain and maintain (a) all-risk insurance against loss of and damage to the Equipment for not less than its full replacement value, and (b) combined public liability and property damage insurance.  Upon the request of Service Provider, Customer will provide Service Provider physical access to the Equipment for maintenance and other operational issues, and, in the event of expiration or termination of the Agreement, Customer will return the Equipment to Service Provider in good repair, condition and working order, ordinary wear and tear excepted, by delivering the Equipment, at Customer's expense, to Service Provider. Customer will pay to Service Provider the replacement value of any lost, stolen, misappropriated, seized, damaged or unreturned Equipment.

(b) If Service Provider allows Customer to colocate Customer's computer or network equipment ("***Colocated Equipment***") within any area owned or controlled by Service Provider under a Colocation Service Order, Customer represents and warrants to Service Provider that Customer owns all Colocated Equipment and that such Colocated Equipment is not owned, leased, or controlled by a third party.  Customer shall be responsible for obtaining insurance in reasonable amounts for any Colocated Equipment within any area owned or controlled by Service Provider. Customer must provide a certificate of insurance to Service Provider naming Service Provider as an additional insured. Service Provider will not be liable for any loss or damage related to Colocated Equipment other than loss or damage arising out of the willful misconduct or gross negligence of Service Provider or its agents. Customer accepts all liability and responsibility for any damages and losses arising out of any malfunction or other issue with Customer's Colocated Equipment.

(c) All Colocated Equipment in any area owned or controlled by Service Provider, shall be removed by Customer, at Customer's expense, upon the expiration or termination of the Agreement.  Should Customer fail to comply with the requirements of this provision within ten (10) days after the expiration or termination of the Agreement or any applicable Service Order, Service Provider may, without notice or demand and in addition to any other right or remedy available at law or in equity, declare the Colocated Equipment abandoned and take possession and/or dispose of the Colocated Equipment, without being guilty of trespass or misappropriation.  Customer releases Services Provider and waives any claims, causes of action or damages against Service Provider related in any way to Service Provider's exercise of the foregoing rights as well as any resulting loss or destruction of any data and information that is within or on the Colocated Equipment.  Any Colocated Equipment so removed and retained by Service Provider will only be returned to Customer on payment in full of all storage costs, past due fees and charges.

11. <u>Proprietary Rights</u>.

(a) The Services contain software and other copyrighted and proprietary products and materials of Service Provider, certain components of which are or may be licensed from one or more of Service Provider's licensors (collectively, the "***Service Provider Property***").  Subject to the limited rights expressly granted hereunder, Service Provider and its licensors reserve all of its and their respective right, title and interest in and to the Services and other Service Provider Property, including all patents or applications therefor, copyrights, trademarks, domain name rights, trade secret rights and all other intellectual property rights (collectively, "***Intellectual Property Rights***") therein.  Service Provider may modify or improve the Services and/or Service Provider Property at any time and Service Provider's rights (including all Intellectual Property Rights) will include all enhancements, modifications, adaptations and/or derivative works therein and thereto (whether made by Service Provider, a third-party or jointly).

(b) Customer shall not: (i) modify, copy or create any derivative works based on the Services; (ii) license, sublicense, sell, resell, rent, lease, transfer, assign, distribute, time share, offer in a service bureau or otherwise make the Services available to any third party; (iii) reverse engineer or decompile any portion of the Services, including any software utilized by Service Provider in the provision of the Services; (iv) access the Services if it is a direct competitor of Service Provider or in order to build any competitive or commercially available product or service or for purposes of monitoring the availability, performance or functionality of the Services, or for any other benchmarking or competitive purposes; (v) copy any features, functions, integrations, interfaces or graphics of the Services; (vi) use the Services in violation of laws or outside the scope of the rights granted in the Agreement; (vii) in connection with the Services, send or store any material that (x) infringes on any Intellectual Property Rights of Service Provider, Service Provider's licensors or any third-party, or

is (y) obscene, threatening, or otherwise unlawful or tortious or violates applicable law or another party's rights, including any privacy, publicity, import and export control, data protection, electronic communications, or anti-spamming Laws or rights; (viii) send or store any viruses, worms, time bombs, Trojan horses and other harmful or malicious code, files, scripts, agents, or programs in connection with the Services; (ix) interfere with or disrupt performance of the Services or the data contained therein; or (x) attempt to gain access to the Services or their related systems or networks.

12.     Termination.

(a)     The Agreement or any applicable Service Order(s) (other than for failure by Customer to pay any undisputed amounts, which is addressed in Section 5(c) above) shall immediately terminate: (i) upon the occurrence of any material breach of the Agreement by either party which breach is not cured within thirty (30) days after receipt of written notice thereof; or (ii) if either party is declared bankrupt or insolvent, or makes an assignment for the benefit of his or its creditors, or if a receiver is appointed or any proceedings are commenced, voluntarily or involuntarily, by or against either party under any bankruptcy or similar law.

(b)     Upon any termination of the Agreement or any Service Order, Customer shall, as of the date of such termination, immediately cease accessing and otherwise utilizing the applicable Services. If Customer terminates the Agreement or any Service Order prior to the expiration of the Term for Service Provider's uncured breach, Customer shall be entitled to a refund of all pre-paid fees for the Services paid for but not provided by Service Provider beyond the effective date of termination. If, prior to the expiration of the Term, (a) Customer terminates the Agreement or any Service Order and such termination is not due to Service Provider's uncured breach; or (b) Service Provider terminates the Agreement or any Service Order due to Customer's uncured breach (collectively, an "***Early Termination***") and Customer has not already paid in advance the full amount of all fees due under the Service Orders being terminated, Customer shall pay Service Provider an early termination charge equal to all fees, including all applicable taxes, set forth in each Service Order being terminated which would otherwise be due through the end of the entire Term under such Service Orders (the "***Early Termination Fee***"). The parties agree that the precise damages resulting from an Early Termination are difficult to ascertain and the Early Termination Fee is a reasonable estimate of anticipated actual damages and not a penalty. Customer agrees and acknowledges that the Early Termination Fee shall apply even if Customer terminates the Agreement or any Service Order prior to commencement of Customer's access to or use of the Services. The Early Termination Fee shall be due and payable within ten (10) days of the effective date of termination and any prepaid fees will be applied towards the amount of the Early Termination Fee to be paid by Customer.

13.     Removal of Customer Data; Transition Services.

(a)     If Service Provider receives a written request from Customer within thirty (30) days after any expiration or termination of the Agreement or applicable Service Order, then for a period of up to thirty (30) days after such request is received, Service Provider will make the Customer Data available to Customer through the Services on a limited basis solely for the purpose of allowing Customer to retrieve such Customer Data. After such thirty (30) day period for retrieval of Customer Data has elapsed, Service Provider will have no obligation to maintain or provide any Customer Data and may thereafter, unless prohibited by applicable law, delete all Customer Data without any liability to Service Provider for such deletion.

(b)     If Customer requires Service Provider's assistance in removing or transitioning Customer Data, Customer may acquire such additional Services at Service Provider's then-current billing rates and upon payment to Service Provider of a transition fee equal to Twenty-Five Thousand Dollars ($25,000) (the "***Transition Fee***"). Customer acknowledges and agrees that given the time required of, and the expenses to be incurred by, Service Provider in connection with any transaction Services, the Termination Fee is intended to serve as an advance payment relative to the fees and expenses to be charged to Customer during the performance of such transition Services. Absent payment by Customer to Service Provider of the Transition Fee, Service Provider shall have no obligation to provide any transition Services whatsoever or assistance in connection with the transfer of any Customer Data.

14.     Indemnification.  Customer shall indemnify, defend and hold harmless Service Provider and any parent, subsidiary and affiliated company of Service Provider, and each of their respective directors, officers, principals, shareholders, employees, agents, trustees, representatives and successors and assigns, from and against any and all taxes, penalties, fines, damages, sanctions, losses, assessments, liabilities, claims, costs, obligations and other expenses (including attorneys' fees),

whether or not resulting from third party claims, arising out of or relating to, and whether or not contributed to by the act or omission of another (third) party (i) any breach or alleged breach of any representation, warranty, agreement, term or covenant of Customer as set forth in the Agreement, and (ii) any violation of applicable law relative to Customer's use of the Services.

15. Acceptable Use Policy. Customer and all third parties obtaining access to the Services through the Customer will comply with the Acceptable Use Policy, which is found at http://www.detroitit.com ("*AUP*"). Service Provider may suspend all or any of the Services upon a violation of the AUP. Customer shall be responsible to ensure that each of its employees, contractors and all other third parties obtaining access to the Services through Customer comply with the AUP and Customer shall indemnity Service Provider alleged or actual violation of the AUP by Customer or any such employees, contractors or third parties.

16. Force Majeure. In no event shall either party have any claim or right against the other arty for any failure of performance (except for Service Provider's right to seek payment of all accrued charges) due to causes beyond that party's reasonable control, including, but not limited to: acts of God, fire, explosion, vandalism, fiber optic cable cut, storm, flood or other similar catastrophes; any law, order, regulation, direction, action or request of the United States Government, or of any other government, including state and local governments having or claiming jurisdiction over either of the parties or of any department, agency, commission, court, bureau, corporation, or other instrumentality of any one or more said governments, or of any civil or military authority; national emergencies; unavailability of materials or rights-of-way; insurrections; acts of terrorism; riots; wars; strikes; lock-outs, work stoppages or other labor difficulties; or supplier failures, shortages, breaches or delays.

17. Non-Solicitation. During the Term and for twelve (12) months thereafter, Customer agrees that it shall not, either on Customer's own behalf or in conjunction with any third party, directly or indirectly, solicit Service Provider's employees, independent contractors or agents for employment, consulting or other services for either Customer or any third party without the prior written consent of Service Provider, which consent may be withheld in Service Provider's sole and absolute discretion.

18. Compliance with Laws. Each party shall comply with all applicable laws and regulations in the course of performing under the Agreement.

19. Export and OFAC Compliance. The Services and other technology Service Provider makes available, and derivatives thereof, may be subject to export laws and regulations of the United States and other jurisdictions. Each party represents that neither it nor any of its employees is (a) a person or entity with whom U.S. entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("*OFAC*") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action; or (b) named on any U.S. government denied-party list. Customer shall not permit any person or entity to access or use any of the Services in a U.S. embargoed country or in violation of any U.S. export law or regulation.

20. Entire Agreement. The Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all other agreements, whether oral or written, between the parties with respect to such subject matter.

21. Survival. The parties' respective representations and covenants, together with obligations of indemnification, confidentiality and limitations on liability will survive the expiration, termination or rescission of the Agreement and continue in full force and effect.

22. No Third Party Beneficiaries. The Agreement does not, and the parties do not intend it to, confer any rights or remedies on any person other than the parties to the Agreement.

23. Severability. If any provision of the Agreement is determined by any court of competent jurisdiction to be invalid or unenforceable, such provision shall be interpreted to the maximum extent to which it is valid and enforceable, all as determined by such court in such action, and the remaining provisions of the Agreement shall, nevertheless, continue in full force and effect without being impaired or invalidated in any way.

24. <u>Waiver</u>.  The Agreement may only be amended by a written instrument signed by each of the parties.  A waiver of any right under any provision of the Agreement by either party hereunder shall be valid only if such waiver is in writing and signed by the party to be charged.  No waiver of any right under any provision of the Agreement on any occasion shall be a waiver of any other right or under any other provision or on any other occasion.  No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act.

25. <u>Independent Contractors</u>.  The parties to the Agreement are independent contractors, and no agency, partnership, joint venture, or employee-employer relationship is intended or created by the Agreement.  Neither party shall have the power to obligate or bind the other party.

26. <u>Assignment</u>.  Except as otherwise provided herein, neither party may assign, transfer, delegate or otherwise dispose of, whether voluntarily or involuntarily, by operation of law or otherwise, the Agreement or any Service Order or any rights or obligations under thereunder, without the prior written consent of the other party, and any purported assignment, transfer, delegation or disposal in violation of this provision will be null and void.  Service Provider may terminate the Agreement, any Service Order or any part thereof by written notice which termination shall be effective on the date specified in such notice, without any liability, in the event that Customer assigns the Agreement or any Service Order without Service Provider's prior written approval.  Notwithstanding the foregoing, Service Provider may assign all of its rights and obligations under the Agreement or any Service Order to an affiliate or a successor-in-interest of Service Provider without the prior written consent of Customer.

27. <u>Change in Control</u>.  Service Provider shall have the right to terminate the Agreement, any Service Order or any part thereof without any further obligation, if Customer shall undergo a change of control, which shall be defined as the acquisition of more than fifty percent (50%) of its equity voting rights (thirty percent (30%) if Customer is a publicly held company).

28. <u>Governing Law; Venue</u>.  The Agreement is a contract made under, and shall be governed by and construed in accordance with, the laws of the State of Michigan without giving effect to choice of law principles of such State.  The parties hereby agree that any legal or equitable action or proceeding with respect to the Agreement shall be brought only in any court sitting in Oakland County of the State of Michigan, or the United States District Court for the Eastern District of Michigan, Southern Division, and each of the party's hereby submits to and accepts generally and unconditionally the jurisdiction of those courts with respect to such party and such party's property and irrevocably consents to the service of process in connection with any such action or proceeding by personal delivery or by the mailing thereof by registered or certified mail, postage prepaid to the party's address.  No action, regardless of form, arising out of the transactions relating to the Agreement, may be brought by either party more than one (1) year after the cause of action has accrued.

29. <u>Consent to Electronic Delivery</u>.  Customer agrees to receive and/or obtain any and all Service Orders, billing statements and other notifications from Service Provider via electronic communications.  Customer accepts electronic communications from Service Provider as reasonable and proper notice, for the purpose of any and all laws, rules and regulations, and agree that such electronic form fully satisfies any requirement that such communications be provided to Customer in writing or in a form that it may keep.

30. <u>Change to the Agreement</u>.  Service Provider may, from time to time and in its sole discretion, modify these Terms and Conditions as well as any other terms and conditions of the Agreement.  All modifications shall be effective upon their publication on Service Provider's website.  It is Customer's responsibility to review Service Provider's online services for such modifications on a frequent basis.  If Customer continues to use the Services following any such modification, such use will be deemed acceptance of such modification by Customer.  Any modifications requested by Customer to any of the terms of the Agreement must be approved in writing by Service Provider.

31. <u>Electronic Signature</u>.  The parties agree that the Agreement shall be executed by electronic signature.  By selecting the "Sign Contract" button, Customer is signing the Agreement electronically.  Customer agrees that his, her or its signature is the legal equivalent of Customer's manual signature on the Agreement.  By selecting the "Sign Contract" button, Customer consents to be legally bound by the Agreement.  Customer also agrees that no certification authority or other third party verification is needed to validate its E-signature and that the lack of such certification or third party verification will not in any way affect the enforceability of its E-signature or any resulting contract between Customer and Service Provider.  The person who selects the "Sign Contract" button also represents that he or she is authorized to sign on behalf of Customer

to enter into the Agreement. If the "Sign Contract" button is selected, a signatory page will be included with a copy of the Agreement indicating that Customer signed the Agreement, the Customer was duly authorized to sign, and the execution date of the Agreement.

32. <u>Recording and Monitoring of Calls</u>. Customer understands, consents to and authorizes Service Provider without further notice or warning and in its discretion, to monitor or record telephone conversations that Customer, or anyone acting on Customer's behalf, has with Service Provider for quality control and training purposes, or for its own protection. Customer acknowledges and understands that, while Customer's communications with Service Provider may be overheard, monitored, or recorded without further notice or warning, not all telephone lines or calls may be recorded by Service Provider, and Service Provider does not guarantee that recordings of any particular telephone calls, or other electronic communication, will be retained or retrievable.

V.2.1
January 2020