UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan
corporation; and DETROIT AXLE QSSS,
INC., a Michigan corporation,

    Plaintiffs,

v.

DETROIT IT, LLC, a Michigan limited
liability company, ERIC
GRUNDLEHNER, an individual,

    Defendants,

and

DETROIT IT, LLC, a Michigan limited
liability company,

    Counterclaim Plaintiff,

v.

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE, a Michigan corporation;
DETROIT AXLE, INC., a Michigan
corporation; and DETROIT AXLE QSSS,
INC., a Michigan corporation; and
MOUHAMED MUSHEINESH, an
individual, jointly and severally,

    Counterclaim Defendants.

Case No. 2:21-cv-10163

Hon. Gershwin A. Drain
Magistrate Anthony P. Patti

## BRIEF IN OPPOSITION TO MOTION TO DISQUALIFY VARNUM LLP AS COUNSEL FOR DEFENDANTS DETROIT IT, LLC AND ERIC GRUNDLEHNER

## STATEMENT OF ISSUE PRESENTED

Should Varnum LLP ("Varnum") be disqualified from representing Defendants in this lawsuit when Varnum's prior representation of Plaintiffs was not substantially related to the lawsuit and Varnum did not acquire confidential information from Plaintiffs that is material to the lawsuit?

Plaintiffs argue: Yes

Varnum and Defendants argue:  No

## CONTROLLING AUTHORITY

*Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990)

*Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001)

*DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d. 760 (E.D. Mich. 2003)

*Franklin Capital Funding v. AKF, Inc.*, No. 19-cv-13562, 2020 WL 3605155 (E.D. Mich. July 2, 2020)(Drain, J.)

Michigan Rules of Professional Conduct 1.9

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Varnum and its attorneys take their ethical obligations very seriously. Because Plaintiffs (collectively "Axle") were former Varnum clients, before agreeing to represent Defendants (collectively "Detroit IT") in litigation adverse to Axle, Varnum analyzed whether it had a former client conflict under Michigan Rule of Professional Conduct 1.9.

Specifically, Varnum considered both (a) whether the litigation between Detroit IT and Axle was substantially related to Varnum's prior representation of Axle; and (b) whether Varnum had otherwise obtained confidential information from Axle that was material to the litigation. Varnum concluded that its prior representation of Axle was not substantially related to the litigation between Axle and Detroit IT and that Varnum had not obtained confidential information from Axle that was material to the litigation, such that it did not have a former client conflict precluding it from representing Detroit IT.

Last month, counsel for Axle wrote to Varnum alleging that Varnum had a conflict and should withdraw. ECF No. 70-2, PageID 2759-2761. In response, the issue was escalated to Varnum's General Counsel, who undertook several steps to independently assess whether Varnum had a former client conflict. These steps included: (1) interviewing Matt Bower ("Bower"), the relationship attorney for Varnum's prior work for Axle, and Brad Defoe ("Defoe"), the lead litigation counsel

1

for Detroit IT on this matter, concerning any communications either of them may have had with Axle about Detroit IT; (2) conducting a search of Varnum's emails and document management system to identify any written communications between Axle and Varnum related to Detroit IT; and (3) reviewing Varnum's time records and invoices to Axle to identify any references to Detroit IT.

This review confirmed that Varnum does not have a former client conflict under MRPC 1.9. Defoe confirmed that he did not have any communications with Axle about Detroit IT. Bower told Varnum's General Counsel that the only communication he had with Axle related to Detroit IT was a single brief exchange with Counter-Defendant Mouhamed Musheinesh ("Musheinesh"), Axle's president. Musheinesh told Bower that Axle was unhappy with Detroit IT and was interested in speaking to another IT provider that Bower had previously introduced to him, but Bower was not provided any specifics as to what the issues were between Axle and Detroit IT. Bower Decl., ¶¶ 17-20, **Ex. 1.** Bower responded by making an email introduction between Musheinesh and another IT vendor, Macro Connect. 10/17/20 Bower email, **Ex. 2.** As a follow-up to that email, Bower told Macro Connect that Mushinesh was "not happy with Detroit IT. Not sure what the issue is but he wanted to talk to you guys again. Good luck!" 10/19/20 email, **Ex. 3.**

Varnum's email and document search confirmed that the only written communication between Varnum and Axle even tangentially related to Detroit IT

was the email discussed above. Varnum's time record and invoice search found no references to Detroit IT or to potential or actual litigation with Detroit IT.

Varnum's General Counsel wrote back to Plaintiffs' counsel explaining all of this <u>prior to Plaintiffs filing their motion to disqualify</u>. Varnum's General Counsel also invited Plaintiffs' counsel to provide any additional information or evidence in Axle's possession demonstrating that Varnum had a conflict. 7/27/23 Walters letter, **Ex. 4.** Instead, Plaintiffs filed their motion to disqualify Varnum the following day.[1]

Varnum does not have a former client conflict. Rather, Axle has attempted to manufacture a conflict by embellishing and mischaracterizing its prior relationship with Varnum as a litigation tactic to interfere with Defendants' right to retain counsel of their choosing. While Axle is apparently unhappy that a law firm it worked with in the past is now representing a party adverse to it in litigation, Axle's subjective feelings about Varnum's representation of Detroit IT is not a basis for disqualification.

The motion to disqualify Varnum should be denied.

---

[1] Tellingly, while including a copy of their letter to Varnum requesting Varnum's withdrawal as an exhibit to their brief (*see* ECF No. 70-2, Page ID 2759-2761), Axle failed to provide the Court a copy of Varnum's response letter.

3

## II. LAW AND ARGUMENT

### A. Standard of Review

A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict of interest or breach of ethical duty by opposing counsel. *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d. 760, 770 (E.D. Mich. 2003); *see also Franklin Capital Funding v. AKF, Inc.*, No. 19-cv-13562, 2020 WL 3605155, at *6 (E.D. Mich. July 2, 2020)(Drain, J.). However, attorney disqualification is an extreme sanction and "should only be utilized when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* at 771 (internal citations omitted); *Franklin Capital Funding*, 2020 WL 3605155, at *6.

"The party seeking disqualification must carry a <u>heavy burden</u> and must meet a <u>high standard of proof</u> before a lawyer is disqualified, because, although a party has no right to specific counsel, a party's choice of counsel is entitled to substantial deference." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999)(emphasis added); *see also Franklin Capital Funding*, 2020 WL 3605155, at *6.

4

The Michigan Rules of Professional Conduct ("MRPC") govern attorneys' ethical responsibilities in this state and in this Court. It is undisputed that Plaintiffs are former clients of Varnum. MRPC Rule 1.9 provides as follows:

**Rule 1.9. Conflict of Interest: Former Client.**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client:

    (1)    whose interests are materially adverse to that person, and

    (2)    about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Michigan Rules of Professional Conduct, Rule 1.9(a)-(b)[2]

The Sixth Circuit has established a three-part test to determine if disqualification is appropriate under MRPC 1.9, which looks at whether: (1) a past attorney-client relationship existed between the party seeking qualification and the attorney [or law firm] it seeks to disqualify; (2) the subject matter of the past attorney-client relationship was substantially related to the litigation; and (3) the

---

[2] Although the ethical rules regarding conflicts of interest are directed to individual lawyers, conflicts are generally imputed to all lawyers in the same law firm pursuant to MRPC 1.10.

attorney [or law firm] acquired confidential information material to the litigation from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 889 (1990); *see also Franklin Capital Funding*, 2020 WL 3605155, at *7.

### B. Plaintiff Has Not Met its Heavy Burden to Show Disqualification of Varnum is Warranted on this Matter.

#### 1. A past attorney-client relationship existed between Axle and Varnum.

Varnum does not dispute that it previously had an attorney-client relationship with Axle. That attorney-client relationship ended in approximately July of 2022 when Axle directed Varnum to transfer the representation files related to Varnum's work for Axle to the Jaffe law firm. Bower Decl. ¶10.

However, Varnum disputes the allegation that Varnum was Axle's General Counsel and served as counsel for Axle in all of its legal matters. This is simply incorrect. Varnum was engaged by Axle from time to time for specific matters but did not serve as Axle's general counsel. *Id.* ¶¶6-7. During the time Axle worked with Varnum, Axle also worked with the Jaffe law firm on several matters, including the Detroit IT matter (for which Jaffe filed the Complaint in this matter in 2021). *Id.* ¶8.

6

### 2. Varnum's past representation of Axle was not substantially related to the dispute between Axle and Detroit IT.

A lawyer (or law firm) is not categorically prohibited from undertaking a representation adverse to one of its former clients. To the contrary, the Michigan Rules of Professional Conduct expressly allow a lawyer to undertake representation adverse to a former client unless the representation involves "the same or a substantially related matter" as the prior representation of the former client. MRPC 1.9(a). "The underlying question is whether the lawyer (or law firm) was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." MRPC 1.9(a), official comment.

Axle's President Musheinesh stated in his declaration that he had numerous conversations with Varnum about its issues with Detroit IT, including discussions with Varnum attorney Matt Bower about termination of Axle's contract with Detroit IT and about Axle's litigation strategy against Detroit IT. Musheinesh Decl, ¶¶ 16, 19-27, ECF No. 70-3, PageID 2765-2767. According to the declaration, these discussions included whether to name Detroit IT's principal, Eric Gundlehner, as an individual defendant and whether to include RICO claims against Detroit IT. *Id.* ¶¶24-25. Musheinesh describes Bower as "a key part of developing Axle's litigation strategy" against Axle and alleges that Axle continued to consult with Bower after its complaint was filed against Detroit IT in this matter. *Id.* ¶¶26-28.

7

Varnum agrees that, <u>if these substantive conversations about Detroit IT had occurred as alleged by Axle</u>, disqualification of Varnum would be appropriate. However, Varnum flatly denies these allegations.

Attached as **Exhibit 1** is the declaration of Matthew Bower, the primary relationship attorney for Varnum's former work for Axle and the attorney Musheinesh alleges he had multiple substantive conversations with about Detroit IT. Bower denies ever having any substantive discussions with Musheinesh or anyone else at Axle about Detroit IT or this litigation. Bower Declaration, ¶¶11-23.

Given the directly contradictory declarations of Musheinesh and Bower, the Court could choose to hold an evidentiary hearing on the issue. However, there is a host of additional evidence that strongly supports the conclusion that there were <u>not</u> substantive communications between Axle and Varnum about Detroit IT or the subject matter of this litigation, such that Axle has not (and cannot) meet its <u>heavy burden</u> of satisfying the <u>high standard of proof</u> that "some specifically identifiable impropriety <u>actually occurred</u>" *DeBiasi*, 284 F. Supp. 2d. at 771 (emphasis added); *see also Valley-Vulcan Mold Co.*, 237 B.R. at 337; *Franklin Capital Funding*, 2020 WL 3605155, at *6.

*First*, Varnum's contemporaneous time records and invoices to Axle do not describe <u>any</u> communications between anyone at Varnum and anyone at Axle about Detroit IT or the Detroit IT litigation. Bower Decl. ¶¶13-16. It is beyond belief that

8

Varnum attorneys would have had numerous substantive conversations with Axle about Detroit IT and the Detroit IT litigation without recording <u>any</u> time or invoicing Axle <u>any</u> charges for those communications.

Bower and the other Varnum attorneys who worked for Axle always recorded their time on substantive matters for Axle and would have recorded his time for any substantive consultations with Axle, particularly regarding potential or actual litigation. *Id.* ¶¶13-14. The fact that Axle was not billed for any consultations with Varnum related to Detroit IT is, standing alone, compelling evidence that Varnum did not represent Axle on any matter substantially related to Detroit IT and did not obtain confidential information from Axle that is material to this litigation.

*Second*, Varnum's search of its email and document management systems identified only a single email thread related to Detroit IT. The email thread did not discuss the issues Axle was having with Detroit IT or the possibility of litigation against Detroit IT.

Specifically, Bower emailed Musheinesh in October 2020 regarding Axle's interest in reconnecting with Macro Connect (another Detroit-area IT provider). 10/17/20 Bower email to Musheinesh, **Ex. 2**. Bower had previously introduced Musheinesh to Macro Connect prior to Axle contracting with Detroit IT. During a brief telephone conference between Musheinesh and Bower, Musheinesh mentioned to Bower that Axle was not happy with Detroit IT and was interested in exploring a

9

new IT vendor. However, there was no substantive discussion between Bower and Musheinesh about what the issues were between Axle and Detroit IT or the possibility of litigation between Axle and Detroit IT. Bower Decl. ¶¶18-19.

Indeed, a contemporaneous email from Bower to Macro Connect in October 2020 confirms that Axle did not provide Varnum any substantive information about its issues with Detroit IT. In that email, Bower told Macro Connect that Musheinesh was interested in talking with Macro Connect because Axle was "not happy with Detroit IT. Not sure what the issue is but he wanted to talk to you guys again. Good luck!" 10/19/20 email, **Ex. 3**; *see also* Bower Decl. ¶¶20-21.

*Third*, Musheinesh alleges that Bower was a "key part of developing Detroit Axle's litigation strategy against Defendants", including that Axle should file a stronger amended complaint name Grndlehner individually and bring RICO claims against the Defendants. Musheinesh Decl. ¶¶24-25, 28, ECF No. 70-3, Page ID 2766-2767. These allegations defy belief. Bower is a corporate/transactional attorney – not a litigator – at a large law firm with a host of litigators on staff. Bower's practice is to bring in the support and expertise of an experienced litigator whenever a client wishes to discuss potential litigation or litigation strategy, which he did on other litigation matters for Axle. Bower Decl. ¶¶ 3, 7, 23. Bower is not knowledgeable about litigation strategies, such as whether and when to name the principal of an entity as an individual defendant or whether and when to bring a

RICO claim and would never have advised a client on such issues. There are no time records or emails supporting Musheinesh's bald allegation. Axle's allegations are simply not credible.

*Fourth*, the specific allegations that Musheinesh made in his declaration about communications with Bower regarding Detroit IT and the litigation with Detroit IT are noticeably downplayed in the demand letter that Axle's counsel sent to Varnum prior to filing their motion. The letter from Axle's counsel to Varnum focuses on Varnum's representation of Axle for a decade on a variety of different matters, such that Varnum had access to Axle's "new product plans, business plans, sales data, customer data, marketing plans, and other confidential information" and had a conflict as a result (even though none of that information is material to the dispute between Axle and Detroit IT). ECF No. 70-2, PageID 2759.

The letter includes only a passing and very general reference to the allegation that Axle was specifically advised by Bower about Detroit IT and the events at issue in this litigation. *Id.*, PageID 2760. Only after Axle received the letter from Varnum's General Counsel detailing why there was no conflict was Musheinesh's embellished declaration shared with Varnum.[3]

---

[3] Musheinesh's declaration is undated, so it is not clear when the declaration was prepared.

11

In short, the allegation that Varnum represented Axle on issues related to Detroit IT is contrary to both the great weight of the evidence and to common sense. There are no time records or invoices showing any substantive communications between Axle and Varnum related to Detroit IT. There are no emails or other documents between Axle and Varnum regarding any substantive issues between Axle and Detroit IT. The one email that does exist states <u>explicitly</u> that Varnum was "not sure what the issue is" between Axle and Detroit IT. 7/19/20 email, **Ex. 3.** Bower – as an officer of the court and attorney bound by the Michigan Rules of Professional Conduct – specifically denies that any substantive communications with Axle concerning its issues with Detroit IT ever occurred. Axle had counsel separate from Varnum (the Jaffe firm) who represented Axle in its issues with Detroit IT, including the filing of the complaint.

Axle was not represented by Varnum concerning Detroit IT. Varnum's prior representation of Axle on other matters was not substantially related to the litigation between Axle and Detroit IT. Axle has not met its heavy burden of proving otherwise.

### 3. Varnum did not obtain confidential information from Axle that is relevant and material to the dispute between Axle and Detroit IT.

As discussed in detail above, Varnum did not obtain confidential information from Axle concerning its issues with Detroit IT. While Varnum does have some

12

general knowledge of Axle's business from its past representation of Axle on other matters, Varnum has no reason to believe that any of that information is material to this litigation. Bower Decl. ¶24. Bower is not part of the litigation team on this matter and has reaffirmed that he has (and will continue to) meet his ethical obligation not to use any confidential information he might have obtained from Axle to Axle's disadvantage. *Id.* ¶¶25-26.

It is Axle's "heavy burden", as the party seeking disqualification, to establish that "there is a reasonable possibility that some specifically identifiable impropriety actually occurred." *DeBiasi*, 284 F. Supp. 2d. at 771; *see also Franklin Capital Funding*, 2020 WL 3605155, at *6. It is not sufficient for Axle to vaguely speculate that it believes Varnum possesses confidential information that is material to this litigation. Axle has failed to meet its burden of establishing how Varnum's generalized knowledge of certain aspects of Axle's business constitutes confidential information that is material to the litigation.

### III. CONCLUSION

Axle has not met – and cannot meet – its heavy burden of satisfying the high standard of proof that "some specifically identifiable impropriety actually occurred" as required to prevail on a motion to disqualify counsel. *DeBiasi*, 284 F. Supp. 2d. at 771 (emphasis added); *see also Valley-Vulcan Mold Co.*, 237 B.R. at 337; *Franklin Capital Funding*, 2020 WL 3605155, at *6. Varnum's representation of Detroit IT cannot be "justly regarded as a changing of sides in the matter in question," as Varnum never provided substantive legal advice to Axle about its issues with Detroit IT. MRPC 1.9(a), official comment.

Varnum respectfully requests that this Honorable Court deny the Motion to Disqualify Varnum LLP as Counsel for Defendants.

VARNUM LLP

Date: August 17, 2023         By: /s/ Bryan Walters
                                  Bryan R. Walters (P58050)
                                  Business Address and Telephone:
                                     P. O. Box 352, Bridgewater Place
                                     Grand Rapids, MI  49501-0352
                                     (616) 336-6000
                                     brwalters@varnumlaw.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

By: s/ Bryan R. Walters
Bryan R. Walters (P58050)
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336/6000
brwalters@varnumlaw.com

21561834.1