UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AXLE OF DEARBORN, INC D.B.A
DETROIT AXLE, A MICHIGAN
CORPORATION; DETROIT AXLE,
INC., A MICHIGAN
CORPORATION; AND DETROIT
ACLE QSS, INC., A MICHIGAN
CORPORATION,

Plaintiffs,

v.

DETROIT IT, A MICHIGAN
LIMITED LIABILITY COMPANY
AND ERIC GRUNDLEHNER, AN
INDIVIDUAL,

Defendants,

And

DETROIT IT, LLC A MICHIGAN
LIMITED LIABILITY
COMPANY,

COUNTER- PLAINTIFF,

V.

AXLE OF DEARBORN, INC D.B.A
DETROIT AXLE, A MICHIGAN
CORPORATION; DETROIT AXLE,
INC., A MICHIGAN
CORPORATION; AND DETROIT
ACLE QSS, INC., A MICHIGAN
CORPORATION, AND MOUHAMED
MUSHEINESH AN INDIVIDUAL

Case No. 21-cv-10163

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

1

                    COUNTER -
                    DEFENDANTS
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'/COUNTER DEFENDANTS' MOTION TO DISQUALIFY VARNUM AS COUNSEL FOR DEFENDANTS DETROIT IT, LLC AND ERIC GRUNDLEHNER [ECF NO. 70]

### I.    Introduction

Plaintiffs/Counter-Defendants Axle of Dearborn, Inc., d/b/a Detroit Axle, Detroit Axle, Inc., and Detroit Axle QSSS, Inc. (collectively, "Axle") and Mouhamed Musheinesh ("Musheinesh," together with Detroit Axle, the "Plaintiffs" or "Counter-Defendants") bring several claims against Detroit IT ("Counter Plaintiff") and its president Eric Grundlehner (collectively "Defendants") for alleged hacking, extortion, and liability under the Racketeering and Corrupt Organizations Act ("RICO"). On May 12, 2023, the Court entered an Opinion and Order Granting In Part and Denying In Part Defendant's Partial Motion to Dismiss First Amended Complaint and Granting In Part and Denying In Part Counter-Defendants' Partial Motion to Dismiss and Strike. ECF No. 51.

Defense Counsel—several attorneys from Joelson Rosenberg, PLC—filed motions to withdraw from the case on June 20, 2023. Bradley Defoe and Marisa McConnell—both attorneys at Varnum LLP ("Varnum")—filed appearances in this action on behalf of Defendants on July 12 and 18, 2023. Mr. Defoe filed an extensive

witness list on behalf of Defendants as well. *See* ECF No. 68. The Court granted Joelson Rosenberg PLC's motions to withdraw on August 4, 2023.

Before the Court is Plaintiffs' Motion to Disqualify Varnum as Counsel for Defendants pursuant to MRPC 1.9(a) and (c) (the "Motion"). ECF No. 70.  It was filed on August 3, 2023; Varnum responded on August 17, 2023, and Plaintiffs replied on August 24, 2023. ECF Nos. 77 and 81. The Court heard oral argument on September 1, 2023. The Motion is fully briefed.

For the reasons set forth below, Plaintiffs' Motion to Disqualify Varnum as Counsel for Defendants is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Motion is **GRANTED** with respect to the portions which request that the Court enter an order: (1) disqualifying Varnum as defense counsel, (2) requiring Defendants and Varnum to reveal to Plaintiffs what confidential information and/or secrets of Detroit Axle and Musheinesh Varnum has disclosed to Defendants, and (3) requiring Varnum to cease all communication with Defendants about Detroit Axle and Musheinesh. Varnum LLP is hereby **DISQUALIFIED** from representing Defendants in this matter. Defendants are directed to obtain counsel within **30 days** of this order. Plaintiff's Motion is **DENIED** with respect to the portion that requests a court order requiring Varnum to compensate Detroit Axle and Musheinesh for all costs and attorneys' fees expended in seeking disqualification.  ECF No. 70, PageID.2732.

3

## II.    Factual Background

Varnum does not dispute that it had an attorney client relationship with Axle, which, according to Musheinesh, allegedly began in 2011 and, according to Varnum, terminated in July 2022. ECF No. 70-3, PageID.2764. Varnum submits the declaration of Matthew Bower, a partner in Varnum's corporate practice who served as "the primary point of contact and relationship attorney for Varnum's past representation" of Axle and Musheinesh. ECF No. 77-2, PageID.2911. Other Varnum attorneys supported certain specific projects for Axle as well, including litigation matters. *Id*. at PageID.2910. According to Bower, he was "generally aware of all legal work Varnum performed for both Axle and Musheinesh respectively and was responsible for coordinating such work." *Id*.

Bower asserts that Plaintiffs retained Varnum for specific matters/projects as they arose, "such as trademark matters, landlord/tenant issues, customs issues, and personal issues for Mr. Musheinesh (including estate planning and disputing traffic tickets)." ECF No. 77-2, PageID.2912.  Bower does acknowledge that he received some correspondence from Axle pertaining to Detroit IT, he declares that:

> During a brief telephone conference with Musheinesh in October 2021, he [(Musheinesh)] generally mentioned to me that he was not happy with Detroit IT and was interested in being re-introduced to Macro Connect [another IT provider previously mentioned in correspondence between Musheinesh and Bower]. Musheinesh did not share any details of what Axle's issue(s) were with Detroit IT. I sent an email to both Musheinesh and my contacts at Macro Connect making an email re-introduction between Axle and Macro Connect. I then followed up with

4

Macro Connect separately about the re-introduction. In that follow-up email exchange, I said the following: 'Mike's [Musheinesh's] not happy with Detroit IT. Not sure what the issue is but he wanted to talk to you guys again. Good luck!'

ECF No. 77-2, PageID.2915. Beyond this correspondence, Bower insists that he has "no knowledge of anything about the dispute between Axle and Detroit IT," and thus, no confidential information "material" to this litigation. ECF No. 77-2, PageID.2912.

Musheinesh attaches a different declaration. He claims that "Brad Defoe . . . represented Detroit Axle and the principals of Detroit Axle in multiple litigation matters." ECF No. 70-3, PageID.2766. Musheinesh further alleges that Musheinesh "routinely had conversations with Bower about the issue Detroit Axle was facing, even on matters in which Detroit Axle had retained counsel." *Id*. Musheinesh declares that Axle conferred with Varnum on matters pertaining to Detroit IT, this litigation, and Axle's termination of its contract with Detroit IT. *Id*.   Indeed, Musheinesh insists that "Bower's recommendations directly resulted in the filing of the First Amended complaint in this lawsuit, which included Detroit Axle's RICO claims against Defendants." *Id*. at PageID.2766. Musheinesh asserts that he "consulted with Bower after each significant event in this lawsuit," as well as other Varnum attorneys that were doing work for Detroit Axle about this lawsuit. *Id*. Varnum, of course, denies these allegations as they pertain to Bower, Defoe, and

other attorneys in the firm; the same attorneys whom Musheinesh says represented Axle on matters substantially related to the controversy with Detroit IT.

## III. Discussion

### a. The Court's Authority To Disqualify Attorneys Who Violate the Michigan Rules of Professional Conduct (the "MRPC)

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *DeBiasi v. Charter Cty. of Wayne*, 284 F. Supp. 2d 760, 771 (E.D. Mich. 2003) (internal citations omitted). Courts have the inherent authority to prevent individuals from practicing before it. *See Glenn v. Nasscond, Inc*., No. CV 15-10270, 2016 WL 409409, at *2 (E.D. Mich. Feb. 3, 2016) (citing *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984)). A court may disqualify an attorney for possessing a conflict of interest. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc*., 472 F.3d 436, 437 (6th Cir. 2007). A decision to disqualify counsel must be based on a factual inquiry conducted in a manner allowing appellate review. *Glenn v. Nasscond, Inc*., No. CV 15-10270, 2016 WL 409409, at *2 (E.D. Mich. Feb. 3, 2016) (citing *General Mill Supply Co. v. SCA Servs*., 697 F.2d 704, 710 (6th Cir. 1982)).

A state's ethics rules are appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case. *See National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc*., 466 F.3d 456, 458 (6th Cir. 2006), vacated

6

on other grounds, 472 F.3d 436 (6th Cir. 2007) (citing *Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187, 650 N.W.2d 364, 368–69 (2002)).

Attorneys that practice before this Court are "subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court." E.D. Mich. LR 83.22 (b). Thus, attorneys who practice before this Court are governed by the Michigan Rules of Professional Conduct ("MRPC"). *Valassis v. Samelson*, 143 F.R.D. 118, 120, n.1 (E.D. Mich. 1992). Plaintiffs move to disqualify Varnum under MRPC 1.9(a) and (c). That rule addresses conflicts of interests with former clients; it states in relevant part that:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation. . ..

> (b) [intentionally omitted]

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

>> (1) use information relating to the representation to the disadvantage of the former client, except as Rule 1.6 or 3.3 would permit or require with respect to a client, or when the information has become generally known; or

>> (2) reveal information relating to the representation except as Rules 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.9 (a) and (c). [1]

### b. Standard of Review For Disqualification Motions

The party seeking disqualification bears the heavy burden of proving the grounds for disqualification of counsel. *See Franklin Cap. Funding v. AKF, Inc.*, No. 19-CV-13562, 2020 WL 3605155, at *6 (E.D. Mich. July 2, 2020) (Drain, J.) (citing *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999). In conflict-of-interest cases, the Sixth Circuit applies a three-part test (the "*Dana Corp.* test") for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *MJK Fam. LLC v. Corp. Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009)

---

[1] Although the parties do not raise substantive arguments pertaining to imputed conflicts, the Court notes that MRPC 1.10 (a) provides that "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2." There are exceptions to this rule carved out for certain situations when a lawyer moves firms, but those issues are not relevant here. Thus, if the Court were to find that Bower or Defoe have conflicts of interest as alleged under MRPC 1.9 (a) such they would be prohibited under the MRPC from representing Detroit IT in this litigation, those conflicts would necessarily be imputed to all Varnum attorneys. In other words, if Bower and Defoe are subject to disqualification, all attorneys at Varnum must be disqualified.

(citing *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990).

However, attorney disqualification is an extreme sanction, and the moving party must also show that "there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and [that] the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-11783, 2011 WL 1812505, at *6 (E.D. Mich. May 12, 2011) (citing *DeBiasi*, 284 F. Supp. 2d at 771). In finding that a "reasonable probability" exists that some "specifically identifiable impropriety" occurred, it is appropriate for this Court to look to the applicable rules of professional conduct. *Id.*

Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir.1999), aff'd, 5 Fed. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted). "Unquestionably, the ability [for a party to a lawsuit] to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Glenn v. Nasscond, Inc.*, No. CV 15-10270, 2016 WL

409409, at *2 (E.D. Mich. Feb. 3, 2016) (citing *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988) (internal quotations omitted).

An attorney's violation of the MRPC is but one factor amongst several the Court must consider in determining whether to disqualify counsel, including the need to protect client confidences, the right of a party in civil litigation to obtain counsel of their choice, and avoiding the appearance of impropriety in the legal profession. "The underlying question is whether the lawyer (or law firm) was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." MRPC 1.9(a), official comment.

### c. Analysis

The Court reviewed the Musheinesh and Bower declarations, emails and billing records attached as exhibits, and the parties briefing. As will be discussed in section III. (b)(ii), the Court finds, based on the entire record, that the test articulated in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990) is satisfied here.

Before discussing those factors, however, the Court notes that a salient evidentiary question was raised; whether Varnum attorneys worked on Detroit IT related matters during the length of their attorney client relationship with Axle. Both parties noted at oral argument that they did not believe it was necessary to conduct an evidentiary hearing on this matter. Based on the record before it, the Court finds

that Varnum attorneys, including Bower, advised Axle on matters pertaining to its relationship with Detroit IT. However, in light of the degree of representation described in Bower's declaration, such a finding is not necessary for Detroit IT's former representation of Axle to be considered "substantially related" to the present litigation. Thus, Varnum switched sides and a MRPC 1.9(a) conflict exists by virtue of Varnum's representation of Detroit IT without Axle's consent. To this end, the Court will discuss the MRPC's meaning of "substantially related" in the immediately proceeding section.

### i. The Definition of "Substantially related"

The term "substantially related" is nowhere defined in the MRPC. However, the definition of "substantial" in the Preamble to MRPC 1.0 states: "when used in reference to degree or extent, [the word] denotes a material matter of clear or weighty importance." The Comment to MRPC 1.9 states that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a *wholly distinct problem of that type* even though the subsequent representation involves a position adverse to the prior client." (emphasis added). In addition, "the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client." *S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 766–68 (W.D. Mich. 2004).

11

The Michigan Professional & Judicial Ethics Committee (the "Committee")

has issued several ethics opinions discussing the meaning of "substantially related."

According to the Committee:

> a subsequent matter is substantially related to the subject matter of a
> former representation if the factual or legal issues overlap or if there is
> a likelihood that confidential information obtained in the former
> representation will have relevance to the subsequent representation. In
> the case of doubt, and absent the consent of the former client, a lawyer
> should decline representation.

*S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 768 (W.D. Mich. 2004) (citing

Mich. Prof'l & Judicial Ethics Comm, Op RI–95 (1991) (emphasis added). In

determining whether two matters are substantially related, "[t]he scope and subject

matter of the former and present representations must be examined." Mich. Prof'l &

Judicial Ethics Comm., Op. RI–287 (1997).

In its 1995 informal ethics opinion RI–248, the Committee noted that

Michigan has not taken a specific position on whether a "transactional analysis" or

a narrower "issues analysis" should be applied:

> Some cases use a "transactional analysis," which holds that a conflict exists if
> the prior representation involved even interconnected (but not the same)
> events which could reveal a pattern of client conduct; this is done on the theory
> that relevant confidences could have been acquired by the lawyer in question.
> See, for example, *Analytica, Inc. v. NPD Research, Inc*., 708 F.2d 1263 (C.A.7
> 1983). Other cases use a narrower "issues analysis," finding a "substantial
> relationship" only when the issues involved in the two cases or transactions
> are identical or virtually so. See, for example, *Lawyer Disciplinary Board v.
> Printz*, 192 W.Va. 404, 452 S.E.2d 720 (1994). Michigan has not taken a
> specific position as to which analysis should be used.

12

Mich. Prof'l & Judicial Ethics Comm., Op. RI–248 (1995) (emphasis added).

Whether Michigan takes a broad or narrow approach to interpreting the meaning of "substantially related" is unclear. However, the "transactional analysis probably constitutes the preferred approach in this circuit." *S.D. Warren Co*., 302 F. Supp. 2d at 770. The Sixth Circuit in *General Electric Co. v. Valeron Corp*., 608 F.2d 265 (6th Cir.1979), rejected the narrow "issues analysis" for proving substantial relation in that case, as that test "might well be difficult to apply in practice since the actual issues in lawsuits are frequently not determined until long after the litigation has begun." *General Electric Co*., 608 F.2d at 267. The *General Electric* court upheld the disqualification of an attorney who had prepared drafts of several patent applications for General Electric and then undertook to represent Valeron in litigation in which Valeron asserted defenses of denial of infringement and invalidity based on prior art and invention. *Id*. The trial court found that the matters were substantially related because the attorney, while working at General Electric, had access to files on General Electric's patents, patent applications, patent collections and prior art collections on fitting and pocketing inserts in tools, and the attorney received confidential disclosures while doing his work. *Id*. The appeals court affirmed the trial court's disqualification decision. *Id*.

Regardless of the labels used, the Sixth Circuit takes a broad approach to interpreting Michigan's definition of a "substantial relationship" contained in the MRPC. In *Bowers v. Ophthalmology Grp*., 733 F.3d 647 (6th Cir. 2013), counsel's prior representation of a partner in a partnership entity regarding her attempt to establish an additional ophthalmology practice at a location other than her partnership was a matter "substantially related" to the partner's subsequent lawsuit against the partnership for alleged gender discrimination and retaliation in violation of Title VII. *Id*. As such, disqualification of counsel from representation of the partnership in the subsequent matter was warranted—even where the facts and issues in the litigation were distinguishable from the former client matter—since there was substantial risk that confidential information "as would normally or typically have been obtained by counsel in prior representation of the partner would materially advance partnership's position in [the] subsequent case." *Id*.

Although *Bowers* applied the "substantially related" language contained in Kentucky Rule of Professional conduct 1.9(a), the *Bowers* Court found that the rule was congruent with the test articulated in *Dana Corp*. Further, this Court noted in 2021 that "the Michigan rule, M.R.P.C. 1.9, reads exactly the same as the Kentucky rule and Model Rule 1.9(a)." *Metris-Shamoon v. City of Detroit*, No. 18-13683, 2021 WL 973076, at *2 (E.D. Mich. Mar. 16, 2021). In *Metris-Shamoon*, the Court ruled that, as in *Bowers*, the Michigan rule is congruent with *Dana Corp*., whose three-

14

part test is the proper basis to assess a motion for disqualification. *Id*. Nothing in *Dana Corp.* suggests that a narrow interpretation is more appropriate. In fact, *Dana Corp's* insistence on including "whether the attorney acquired confidential information from the party seeking disqualification" as a factor suggests that it interpreted "substantially related" to encompass matters on which the attorney worked and gained confidential information relevant to the current client matter, regardless of whether the former and current-client matters are factually or legally distinct.

In *DeBiasi*, this court determined the disqualification of attorney in a reverse discrimination action. Counsel for plaintiff, a white male lieutenant employed at the county sheriff's department, was disqualified, based on conflict of interests under MRPC 1.9(b)(2) associated with the attorney's concurrent representation of a local law enforcement union and lieutenant. *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 771 (E.D. Mich. 2003). The court reasoned that the magistrate judge did not err in finding that a conflict existed *due to the attorney's knowledge of confidential matters confided to him in course of his service for union*, particularly with regards to the qualification of black female lieutenant, who was purportedly a similarly situated individual upon whom plaintiff based his claim. *Id*. (Emphasis added).

It is true that the *Debiasi* court noted a salient distinction in the application of MRPC rules pertaining to concurrent client conflicts at issue there, as opposed to former client conflicts at issue here. Particularly, it stated that the three-part test articulated in *Dana Corp.*, "is inapplicable where . . . the court is faced not with an attorney's representation of a former and current client but rather, with a concurrent client relationship." *DeBiasi*, 284 F. Supp. 2d at 771, n.8. It noted as well that, "when an attorney concurrently represents two clients with adverse positions, impropriety is presumed, but the attorney may rebut that presumption by establishing 'that he can represent adverse clients concurrently with equal vigor, without conflict of loyalties and without using confidential information to the detriment of either client.'" *Id*.

The Court does not merely presume a reasonable probability—based on the existence of the former client relationship—that a former client conflict exists such that Varnum's representation of Detroit IT is improper under MRPC 1.9 (a). Rather, as explained *infra*, such impropriety is borne out by Varnum's own representations regarding the scope of its former attorney client relationship with Axle and the confidential information Bower and other attorneys at Varnum obtained by virtue of its lengthy representation of Axle across several transactional and litigation-based subjects. Further, Varnum's assurances that it will not use in this litigation any confidential information it obtained by virtue of representing Axle on distinct

16

matters does not cure the conflict of interest under MRPC 1.9 (a). As such, Axle correctly notes that, "even if it were true that Varnum never heard of Detroit IT once during its representation of Detroit Axle, it would nonetheless be impossible [without Axle's consent] for Varnum to represent Detroit IT in this matter." ECF No. 81, PageID.3042. Varnum's knowledge of Axle's business practices "give it unique insight into witnesses' personalities and strategy, into the veracity of Detroit Axle's damages, and into Detroit Axle's past practices regarding IT and other [contracts] with suppliers and vendors." *Id*.

Finally, as detailed below, a review of the record supports a factual finding that Varnum attorneys, including Bower, advised Axle on matters pertaining to its relationship with Detroit IT.  If true, this conduct would certainly render Varnum disqualifiable from representing Detroit IT in the present litigation against Axle. Thus, under either a broad or narrow interpretation of the substantial relationship test, Plaintiffs have carried their burden of showing that a conflict of interest exists under MRPC 1.9 (a), such that disqualification is warranted. The Court will explain below.

### ii.  The *Dana Corp*. Test

The first factor—the existence of a past attorney client relationship—is undisputed, as Axle is Varnum's former client, Varnum is now representing Detroit IT in this case, and Detroit IT is Axle's adversary in this litigation. The second and

third factors—whether the subject matter of the previous representation is substantially related to the present litigation and whether the attorney obtained confidential information about the former client—are satisfied because various attorneys at Varnum are aware of confidential information as a result of their previous attorney client relationship with Axle, the subject of which is substantially related to this litigation.

Although Defendants are entitled to the counsel of their choice, disqualification of Varnum as Defense counsel in this case is warranted because: (1) there is a reasonable probability that a conflict of interest exists under MRPC 1.9 (a) due to Varnum's representation of Detroit IT without Axle's consent, and (2) under these circumstances, the need to protect Axle's client confidences and avoid the appearance of impropriety in the legal profession outweigh Detroit IT and Grundlhner's right to counsel of their choice.

Varnum asserts that it "does not have a former client conflict. Rather, Axle has attempted to manufacture a conflict by embellishing and mischaracterizing its prior relationship with Varnum as a litigation tactic to interfere with Defendants' right to retain counsel of their choosing." ECF No. 77, PageID.2894. It is true that the declarations of Bower and Musheinesh describe different scopes of representation, presenting an evidentiary question regarding Varnum's previous attorney client relationship with Axle and its knowledge of Axle's controversy with

18

Detroit IT. Varnum avers that "[i]t is not sufficient for Axle to vaguely speculate that it believes Varnum possesses confidential information that is material to this litigation. Axle has failed to meet its burden of establishing how Varnum's generalized knowledge of certain aspects of Axle's business constitutes confidential information that is material to the litigation." ECF No. 77, PageID.2904.

On its face, however, Bower's declaration describes a degree of Bower's representation of Axle—over a multi-year period—on trademark matters, landlord/tenant issues, customs issues, and personal issues for Mr. Musheinesh (including estate planning and disputing traffic tickets). Bower's declaration confirms that Varnum attorneys were working on litigation matters for Axle and Musheinesh as well. ECF No. 77-2, PageID.2911(Bower declared that "on any litigation-related matters in which Varnum represented Axle, I brought in attorneys from our litigation group to handle such matters."). It is unspecified what number of Varnum attorneys represented Axle and Musheinesh across multiple litigation and transaction based subject areas.

By virtue of this previous long-standing attorney client relationship, Varnum obtained confidential information about Axle. This included confidential information pertaining to Axle's: corporate structure, decision-making process, finances, operations, and business relationships with various entities and individuals. Such information is material to this litigation because it could be used to Detroit IT's

19

advantage. Axle's brief cites to Varnum's billing records, noting that "during the period at issue in this case, Varnum invoiced Detroit Axle $120,728.75 for their representation" on various matters, including "business valuation." ECF No. 81, PageID.3043. Several of Detroit IT's counter claims attempt to pierce Axle's corporate veil with respect to Musheinesh and pertain to Axle's allegedly unjustified failure to pay invoices in October and November 2020; this includes Axle's subsequent termination of its contract with Detroit IT. ECF No. 39, PageID.1795. As Axle points out, although purportedly working on distinct matters at the time, Varnum's long term attorney client relationship with Axle allowed it to obtain confidential information about Detroit Axle's business valuation, finances, corporate structure, and decision-making process during the same time period when Detroit IT claims Axle unjustifiably withheld payment and terminated the contract. Further, Varnum's former representation of Axle puts Varnum in a unique position to comment on the extent of Axle's purported damages at the time Detroit IT allegedly hacked and extorted the company's IT system in December 2020 as well. Axle claims it caused the company to "lose over $100,000.00 per day in sales." ECF No. 33, PageID.1498.

The subject matter of Varnum's previous attorney client relationship with Axle—although it puports to be factually distinct—is "substantially related" to the present litigation. Thus, Axle demonstrates a reasonable probability that a violation

of MRPC 1.9(a) actually occurred through Varnum's representation of Detroit IT in this litigation without Axle's consent. Varnum cites no authority requiring, as a matter of law or precedent, that matters "substantially related" under MRPC 1.9(a) need be factually or legally indistinguishable. As such, based on Bower's declaration, Varnum will be disqualified from representing Detroit IT in the present litigation. *See Eternal Pres. Assocs., LLC v. Accidental Mummies Touring Co., LLC*, 759 F. Supp. 2d 887, 894 (E.D. Mich. 2011) (citing *Barkley v. City of Detroit*, 204 Mich.App. 194, 204, 514 N.W.2d 242, 246 (1994) (noting that "an attorney may only undertake to represent a new client against a former client ... where there is no confidential information received from the former client that is in any way relevant to representation of the current client") (citing *General Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir.1979)).

This is true even in the absence of concrete proof that Varnum actually disclosed Axle's confidences or used them to Detroit IT's advantage, as required for MRPC 1.9(c). According to the plain text of MRPC 1.9(a), a conflict of interest exists as soon as an attorney who has formerly represented a client in a matter "*represent[s]*" another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation. (Emphasis added).

Further, considering the record as a whole, Musheinesh's declaration raises a reasonable probability that Bower, as well as other attorneys at Varnum, advised Axle on matters concerning Detroit IT during the course of their representation of Axle. This is a clear conflict under MRPC 1.9 (a). Varnum vigorously disputes these factual allegations, arguing that no emails or billing records show that Varnum worked for Axle on Detroit IT related matters. Musheinesh responds, however, attaching a second declaration which states that "it is not surprising that Varnum has not found any e-mails from me about Detroit IT as I rarely communicated over email. Instead, I regularly had conversations with Bower over the telephone or in person." ECF No. 81-1, PageID.3050. He also stated that Bower "did not record the substance of all of the conversations that I had with him in the invoices I received from Varnum." *Id*. At oral argument Plaintiffs also represented that Varnum attended joint calls with Plaintiffs' counsel on matters related to Axle's relationship with Detroit IT during the relevant time period alleged in the complaint.

Based on the entire record, a reasonable probability exists that Varnum represented Axle on Detroit IT related matters during the time of Axle and Detroit IT's relationship. As such, under either a broad or narrow interpretation of the substantial relationship test, Varnum's representation of Detroit IT against its former client Axle constitutes a switching of sides and a conflict of interest under MRPC

1.9(a). Thus, Varnum will be disqualified from representing Detroit IT in this litigation.

## IV.    Conclusion

For the reasons set forth above, Plaintiffs' Motion to Disqualify Varnum as Counsel for Defendants is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Motion is **GRANTED** with respect to the portions which request that the Court enter an order: (1) disqualifying Varnum as defense counsel, (2) requiring Defendants and Varnum to reveal to Plaintiffs what confidential information and/or secrets of Detroit Axle and Musheinesh Varnum has disclosed to Defendants, and (3) requiring Varnum to cease all communication with Defendants about Detroit Axle and Musheinesh. Varnum LLP is hereby **DISQUALIFIED** from representing Defendants in this matter. Defendants are directed to obtain counsel within **30 days** of this order. Plaintiff's Motion is **DENIED** with respect to the portion the requests a court order requiring Varnum to compensate Detroit Axle and Musheinesh for all costs and attorneys' fees expended in seeking disqualification.   ECF No. 70, PageID.2732.

**SO ORDERED.**

Dated:  September 13, 2023                         /s/Gershwin A. Drain
                                                                 GERSHWIN A. DRAIN

United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 13, 2023, by electronic and/or ordinary mail.
/s/ Kelly Winslow for Teresa McGovern
Deputy Clerk